**Billy E. SMITH, Respondent,**

v.

**STATE of Missouri, ex rel[.] Jeremy RAMBO, a minor, Debbie Rambo, a/k/a Debbie Carrier, next friend, and Debbie Carrier, individually, Respondents.[1]**

**Missouri Department of Social Services, Div. of Child Supp. Enforcement, Appellant.[2]**

**No. 22429.**

Missouri Court of Appeals,
Southern District,
° Division One.

May 6, 1999.

---

1. Rule 81.03, Missouri Rules of Civil Procedure (1999), which has remained unchanged since January 1, 1980, reads, in pertinent part:

   "The party appealing shall be known as the appellant, and the adverse party as the respondent, but the title of the action shall not be changed in consequence of the appeal...."

   The title of this action, as shown on the trial court's judgment, is: "BILLY E. SMITH, Relator, vs. STATE OF MISSOURI, ex rel [sic] JEREMY RAMBO, a minor, DEBBIE RAMBO, a/k/a DEBBIE CARRIER, next friend, and DEBBIE CARRIER, individually, Respondents." As shall become evident from

footnote 2, *infra*, none of those parties is identified as an appellant in this appeal.

2. Rule 81.08(a), Missouri Rules of Civil Procedure (1999), which has remained unchanged since January 1, 1994, reads, in pertinent part:

   "The notice of appeal shall specify the parties taking the appeal...."

   The notice of appeal in this action specifies the entity taking the appeal as: "Missouri Department of Social Services, Div. of Child Supp. Enforcement." That entity is not named as a party in the title of this action in the trial court. See footnote 1, *supra*. That circumstance is addressed in this court's opinion.

Gerald L. Meyr, Jefferson City, for appellant.

Wallace L. Duncan, Duncan & White, Poplar Bluff, for respondent Smith.

No other appearance.

CROW, Judge.

For the reasons set forth hereunder, this court holds the judgment in this procedurally bizarre case is unappealable for lack of finality, hence this court dismisses this appeal.

The origin of the present dispute is a judgment entered by the Circuit Court of Butler County on March 10, 1982 ("the 1982 judgment"). The 1982 judgment was entered in case number CV381–708 titled: "STATE OF MISSOURI, ex rel[.] Jeremy W. Rambo, A Minor[,] Debbie Rambo, Next Friend[,] Petitioners, vs. Billy E. Smith[,] Respondent."

The 1982 judgment declared that Billy E. Smith ("Smith")[3] is the "natural father" of Jeremy W. Rambo ("Jeremy"),[4] born August 29, 1980, and ordered Smith to pay $199 per month child support commencing March 10, 1982.

At the time the 1982 judgment was entered, Jeremy's mother, Debbie Rambo ("Debbie"),[5] was receiving "AFDC benefits" (inferably, grants from the State of Missouri under the Aid to Families with Dependent Children program, Subchapter IV, Social Security Act of 1935, as amend-

ed, 42 U.S.C. § 601 *et seq.*, and § 208.040, RSMo 1978, *et seq.*, as amended).

During the twelve years following the 1982 judgment, Smith paid some, but not all, of the child support required by that judgment.

In March 1994 (twelve years after the 1982 judgment), Smith went to the court clerk's office and was told by someone that he owed child support totalling $7,210.97. On March 25, 1994, Smith paid that sum to the court.

On November 28, 1994, an "Authorized Representative" of the Director of the Division of Child Support Enforcement ("DCSE") issued an "ADMINISTRATIVE ORDER ON AN EXISTING ORDER" ("AOEO") finding that Smith owed $14,-379.97 for "past-due child support," not including interest.

On December 8, 1994, the same "Authorized Representative" of the Director of DCSE issued an "AMENDED ADMINISTRATIVE ORDER ON AN EXISTING ORDER" ("Amended AOEO") finding that Smith owed $7,139.00 for "past-due child support," not including interest.

Smith appealed the Amended AOEO. An administrative hearing officer ("AHO") of the Department of Social Services, Division of Legal Services, conducted a hearing May 23, 1995.

On May 31, 1995, the AHO issued a "Decision" declaring that as of December 8, 1994, Smith owed a "child support arrearage" of $22,263.20, not including interest. The AHO Decision recited that the AHO was authorized by § 454.475.5, RSMo 1994, to render decisions for the Director of DCSE.

---

**3.** For brevity and clarity, this opinion henceforth refers to Billy E. Smith by his surname. No disrespect is intended.

**4.** For brevity and clarity, this opinion henceforth refers to Jeremy W. Rambo by his forename. No disrespect is intended.

**5.** For brevity and clarity, this opinion henceforth refers to Debbie Rambo by her forename. No disrespect is intended. On a *subsequent date unrevealed by the record,* Debbie became Debbie Carrier.

The next significant event occurred April 8, 1996, when Smith filed a motion in the Circuit Court of Butler County.[6]

On August 28, 1996, the same division of the Circuit Court of Butler County that entered the 1982 judgment held a hearing on the motion referred to in the preceding paragraph. Thereafter, on September 17, 1996, the judge of that division signed a document designated "Order of Modification" ("the 1996 order").

The title atop the 1996 order is the same as the title on the 1982 judgment (set forth earlier in this opinion) except the title on the 1996 order adds that Debbie is also known as Debbie Carrier.[7] However, the 1996 order bears case number CV396–322DR, a different number than the 1982 judgment.

The 1996 order recites that Smith and his lawyer appeared for trial August 28, 1996, that no one appeared for "the State of Missouri," and that Debbie did not appear. The 1996 order sets forth findings of fact including, *inter alia:*

"3. . . .

(b) That Debbie ... is not receiving current child support from the State of Missouri.

(c) That on March 25, 1994, [Smith] paid to the Circuit Court of Butler County, Missouri, the sum of ... $7,210.97 ... which was represented by the Court to be the total amount of arrearage that [Smith] owed to the State of Missouri as and for child support. . . ."

The 1996 order provides, *inter alia:*

" ... that the judgment of March 10, 1982, be and is so modified in that the order requiring [Smith] to pay child support is hereby terminated. The Court finds that on March 25, 1994, [Smith]

satisfied his financial obligation to the State of Missouri in full, that said sum represents the total amount of arrearage owed to the State of Missouri and that any further accrual of child support shown to be owed to the State of Missouri is hereby abated."

On February 28, 1997, an "Authorized Representative" of the Director of DCSE issued an AOEO finding that Smith owed $26,376.99 for "past-due child support," not including interest.[8]

Evidently, Smith requested administrative review of the AOEO identified in the preceding paragraph, as the Director of DCSE scheduled a hearing for June 12, 1997. However, on May 19, 1997, Smith commenced the instant action by filing a "Petition for Writ of Prohibition" in the Circuit Court of Butler County. That court assigned the instant action number CV197–74CC.

The title of the instant action is set forth *supra* in footnote 1. Smith's petition in the instant action provides an abbreviated account of the facts heretofore catalogued in this opinion. Smith's petition avers, *inter alia:*

"8. That the Director of [DCSE] has scheduled a hearing for June 12, 1997, at 1:30 p.m.

9. Any attempt by Respondents to obtain an Administrative Order for current or past support is in direct violation of and superseded by the [1996 order]. Further, the Department of Social Services lacks jurisdiction to make a determination as to current or past support owed because of the [1996] order.

. . . .

11. Relator has no other adequate and timely remedy by appeal or otherwise because Respondents have sched-

---

6. No copy of the motion appears in the record furnished this court. This court gleans from other sources in the record that the motion was denominated "Motion to Modify Judgment as to Child Support."

7. Footnote 5, *supra.*

8. The individual who issued the AOEO of February 28, 1997, is not the individual who issued the AOEO of November 28, 1994, and the Amended AOEO of December 8, 1994.

uled a hearing on the Administrative Order for June 12, 1997."

The prayer in Smith's petition in the instant action asks the trial court to:

" ... issue its Writ of Prohibition commanding Respondents to dismiss said action and to refrain from proceeding further therein...."

Two answers were filed in response to Smith's petition. One was signed by Debbie; it began:

"Comes now Respondents, Debbie Carrier, Individually, Pro se and Respondent Jeremy Rambo by his next friend, Debbie Carrier and for their Answer to the Petition for Writ of Prohibition state as follows[.]"

The answer Debbie signed is henceforth referred to as "Debbie's answer." It pled, *inter alia:*

"These Respondents admit that Respondent will proceed against Relator unless prohibited by an order of this court."

Debbie's answer was filed June 30, 1997. An entry on the trial court's docket sheet that date shows the filing of "Suggestion that a Party is a Minor and Request for Guardian Ad Litem." Although no copy of the "Suggestion" is in the record furnished this court, this court infers that the minor was Jeremy. As reported earlier in this opinion, Jeremy was born August 29, 1980, hence he would have been sixteen when Debbie's answer was filed. Nothing in the record indicates a guardian ad litem was appointed for Jeremy.

The other answer to Smith's petition in the instant action was filed July 1, 1997. It began:

"Comes now Respondent, State of Missouri, by and through Jeffrey Knipmeyer, State's Attorney for the Department of Social Services, and for its Answer to Relator's Petition For Writ Of Prohibition, states[.]"

Among the averments in that answer was the following passage:

"[T]he [1996] Order states that Relator has 'satisfied his financial obligation to the *State of Missouri* in full....' Any financial obligation to the State of Missouri arose from the periods of time when ... Debbie ... received AFDC assistance. While on AFDC, child support obligations are owing to the State, not the custodial parent. Thus, although this Court may have found that Relator had satisfied his obligation to the State of Missouri, the [1996] Order does not consider the amount of arrearage owed to Ms. Carrier personally. The Decision of the administrative hearing officer of May 31, 1995, reflects this distinction.... Relator misrepresents to this Court the total amount of arrearage owed by failing to recognize the distinction between State Debt (arising from the time Ms. Carrier received AFDC) and arrearage owing to Ms. Carrier personally[.]"

The trial court conducted a hearing in the instant action on January 21, 1998. Smith appeared in person and with his lawyer. The "State of Missouri" appeared by lawyer Gerald Meyr. Debbie appeared in person.

No one testified. The facts set forth earlier in this opinion were established by stipulation and documents.

Lawyer Meyr argued that the 1996 order pertained to only the amount Smith owed the State for "AFDC" payments the State made to Debbie. Meyr maintained the 1996 order did not affect the amount Smith owed Debbie for unpaid child support. Meyr said:

"I think that [the 1996] order probably forbids the State of Missouri from attempting to collect the money owed to us in what is known as state debt. It does not bar [Debbie] from seeking additional support."

As this court comprehends the transcript, Meyr conceded that the $7,210.97 Smith paid into court on March 25, 1994,

was the amount Debbie "had received from AFDC."

The trial court thereupon announced:

"So, basically what we are talking about here is a debt of not amounts [Debbie] received through AFDC that the state would be entitled to under the statute [inferably § 454.465, RSMo Cum.Supp.1997], but monies above and beyond that due on the child support order for ... $199.00 ... a month to Debbie Carrier[.]"

Meyr replied: "I believe so, Your Honor."

Following the hearing, the trial court told the attendees that the outcome of the instant action depended on the effect of the 1996 order. The trial court gave the "parties" time to submit briefs.

After receiving briefs, the trial court entered a "Judgment Writ of Prohibition Absolute" on June 3, 1998. This opinion henceforth refers to that adjudication as "the 1998 judgment."

The 1998 judgment contains a finding that the 1996 order established that Smith "had satisfied his financial obligation to the State of Missouri in full, [and] that said sum [of $7,210.97] represented the total amount of arrearage owed to the State of Missouri and that any further accrual of child support shown to be owed to the State of Missouri was abated[.]"

The 1998 judgment provides, *inter alia:*

"[I]t is the decision of this Court that said [1996] Order of Modification was valid as against the State of Missouri and prohibited the State of Missouri from taking any further action against [Smith] relative to any current child support obligation or any alleged past-due child support; and, this Court ... [does] therefore prohibit you, the State of Missouri, firmly and enjoining that you do not further proceed in the premises against .... Smith to continue collection proceedings for the non-support in this case on behalf of the State of Missouri, ex rel Jeremy Rambo, a minor, Debbie Rambo, a/k/a Debbie Carrier, next friend or Debbie Carrier, individually, nor that you attempt anything that may tend to the damage of ... Smith, or to the prejudice of ... Smith or in derogation or contempt of the laws thereof, under penalty.

And if you, the said State of Missouri, have taken action against ... Smith, administratively or otherwise, by reason of the premises, release him therefrom, and absolutely absolve him from the same."

One notice of appeal was filed after the trial court entered the 1998 judgment. As explained in footnote 2, *supra,* the notice of appeal identifies the entity taking the appeal as: "Missouri Department of Social Services, Div. of Child Supp. Enforcement." This opinion henceforth refers to that entity as "Appellant."

Appellant filed a brief in this court; Smith filed a responsive brief; Appellant filed a reply brief. No other brief was filed.

Upon examining the record, this court noted four items of concern. This court thereupon issued an order ("the appellate order") identifying the four and inviting Appellant and Smith to respond, which they did.

Three of the four items in the appellate order require discussion. The first appears in part II of the appellate order.

In part II, this court observed that it appeared Smith intended to make Jeremy a party to the instant action. However, Jeremy was only sixteen years old when Smith filed his petition, and nothing in the record indicates a guardian ad litem was appointed for Jeremy. Part II of the appellate order directed Appellant and Smith to inform this court whether they consider Jeremy a party.

Both Appellant and Smith responded that Jeremy is not a party to the instant action. That position is evidently contrary to a notion held by someone. As reported

earlier in this opinion, an entry on the trial court's docket sheet June 30, 1997 (the date Debbie's answer was filed), shows the filing of a "Suggestion" that a party (inferably Jeremy) is a minor, requesting appointment of a guardian ad litem. Inasmuch as the record furnished this court contains no copy of the "Suggestion," this court cannot ascertain the identity of the person who filed it.

■ Rule 52.02(e), Missouri Rules of Civil Procedure (1999), which has remained unchanged since December 1, 1972, provides that after the commencement of a civil action against a minor defendant and service of process upon him, the civil action shall not be prosecuted any further until a guardian or guardian ad litem is appointed for such minor. The presence of a guardian ad litem is considered essential to the validity of a binding adjudication against a minor. *Y.W. v. National Super Markets, Inc.,* 876 S.W.2d 785, 788–89[10] (Mo.App.E.D.1994). However, Rule 52.02(m) provides that failure to appoint a guardian ad litem for a minor shall not invalidate the proceedings if the court finds that the interests of the minor were adequately protected. *Neosho R–V School District v. McGee,* 979 S.W.2d 537, 539[1] n. 5 (Mo.App. S.D.1998).

Inasmuch as this appeal is being dismissed for lack of a final judgment (as explained more fully *infra* ), this court shall not endeavor to determine whether Jeremy is a party to the instant action or whether a guardian ad litem is required for him if he is a party. After this court issues its mandate, Smith can eliminate the issue about Jeremy by dismissing the instant action as to him in the trial court (which can easily be done, as the 1998 judgment is not final). *See:* Rule 74.01(b) Missouri Rules of Civil Procedure (1999).

■ The second segment of the appellate order requiring discussion is part III. There, this court pointed out that the plural "Respondents" appears after the names of the State of Missouri, Jeremy and Debbie in the title of the instant action,[9] thus indicating Smith was seeking relief against more than one entity. That implication is buttressed by the prayer in Smith's petition which, as we have seen, asked the trial court to command "Respondents" to "dismiss said action" (apparently, a request that the trial court compel "Respondents" to desist from the activity that resulted in the AOEO of February 28, 1997).

Part III of the appellate order observed that the 1998 judgment grants Smith relief against only the "State of Missouri." The 1998 judgment neither grants nor denies Smith relief as to Jeremy or Debbie.

Assuming, arguendo, that Jeremy is not a party (an uncertainity that can be eliminated in the manner set forth earlier in this opinion's discussion of part II of the appellate order), it nonetheless appears that Debbie is a party.

First, Debbie told the trial court at the hearing January 21, 1998, that she was served with summons in the instant action.

Second, Debbie filed an answer and participated in the hearing. Neither Meyr nor Smith's lawyer asked the trial court to strike Debbie's answer on the ground that she is not a party, nor did Meyr or Smith's lawyer object to Debbie's participation in the hearing as a pro se party.

Third, the trial court apparently considered Debbie a party, as manifested by a letter the trial court wrote Meyr and Smith's lawyer prior to entry of the 1998 judgment. In that letter, the trial court declared:

"[W]ith respect to the present suit before this Court, it is in the nature of a Writ of Prohibition. A review of the cases shows that the remedy of prohibition is appropriate against boards, agencies and commissions which exercise quasi judicial functions as well as prohi-

9. Footnote 1, *supra.*

bition is appropriate by a court of higher order against a lower court. I could find no case law which indicated that a Writ of Prohibition could be used against an individual.

Therefore, it is my decision that the Writ of Prohibition will be made permanent with respect to the State of Missouri and any attempt by the State to continue collection proceedings for the non-support in this case. However, the Writ of Prohibition will not lie against Debbie Carrier for any individual obligations that petitioner [sic] may owe to Debbie Carrier. I understand that there are various factors such as statute of limitations, prior payments and all other matters which are not before this Court and will not be taken up with this case."

It is thus evident to this court that the trial court considered whether Smith was entitled to prohibition relief against Debbie and decided that question adversely to Smith. However, the 1998 judgment neither grants nor denies Smith's prayer for a writ of prohibition against Debbie.

■ If a trial court's judgment does not adjudicate all issues and does not make the determination called for by Rule 74.01(b) (mentioned earlier), the judgment is not final and the appeal must be dismissed. *Davis* v. *Beck,* 881 S.W.2d 264, 265–66 (Mo.App.S.D.1994). No determination under Rule 74.01(b) appears in the 1998 judgment and, as noted above, the 1998 judgment does not adjudicate Smith's claim for relief against Debbie. Consequently, this court holds the instant appeal must be dismissed for lack of an appealable judgment. *Id.* at 266[4].

After this court issues its mandate, the trial court can enter judgment containing a provision granting or denying Smith relief against Debbie. If Smith dismisses his petition as to Jeremy, the judgment should recite the dismissal, thereby disposing of all issues and parties.

10. Footnote 2, *supra.*

The third segment of the appellate order requiring discussion is part IV. There, this court pointed out that Appellant is not named a party in the title of the instant action, yet Appellant is the only entity specified on the notice of appeal.[10] The appellate order asked Appellant to explain how it can appeal when it is not named a party in the title of the instant action.

In response, Appellant stated that in hindsight, Smith should have "named the Department of Social Services, Division of Child Support Enforcement as the governmental agency of the State of Missouri involved in this case." *See: Palo* v. *Stangler,* 943 S.W.2d 683, 684–85 (Mo.App.E.D. 1997). Nonetheless, argued Appellant: "If the caption misdesignates [sic] parties, that misdesignation [sic] is not fatal if, in the body of the pleading, the party is properly designated." Appellant maintains it was named in the body of Smith's petition.

Inasmuch as this appeal is being dismissed, this court need not determine whether Appellant was sufficiently named in the body of Smith's petition. After this court issues its mandate, Appellant can ask the trial court to amend the title of the instant action so as to name Appellant a party. If Appellant makes that request, the trial court should grant it.

Because the judgment is not final, the trial court, after issuance of this court's mandate, will be free to consider the claims of error in Appellant's brief (together with the responses in Smith's brief) and determine whether the new judgment should adjudicate any substantive issue differently than the 1998 judgment.

Appeal dismissed.

PREWITT, P.J., and PARRISH, J., concur.