Y.W., a minor, By and Through Vearl D. SMITH, Next Friend, Plaintiff–Appellant,

v.

NATIONAL SUPER MARKETS, INC., Defendant–Respondent.

No. 63785.

Missouri Court of Appeals, Eastern District, Division Three.

April 19, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 19, 1994.

Application to Transfer Denied June 21, 1994.

Marc S. Wallis, Newman & Bronson, St. Louis, for plaintiff-appellant.

Ann Marie Piana, Ann Elizabeth Hamilton, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

Appellant herein appeals the lower court's grant of respondent's motion to dismiss. On September 25, 1991, appellant, an eleven-year-old child, was observed by National Super Markets, Inc.'s security personnel shoplifting candy. While the minor was still detained by National's employee, her mother entered into a stipulated release whereby National agreed not to prosecute the minor in consideration for the minor's agreement not to bring civil charges against National. Subsequently, the minor, by and through her duly-appointed next friend, filed a civil suit against National alleging an assault and battery upon her. The trial court granted National's motion to dismiss on the ground that the minor's right to bring suit against National had been contracted away. Although both the parent's and the minor's names appear on the signature line of the release, it is unclear from the contract, and contested by the parties, whether the minor actually signed the agreement or the mother signed both names in a representative capacity. For the reasons hereinafter stated, such a determination is unnecessary.

 In reviewing the lower court's dismissal of appellant's petition, we must determine if there are any grounds for relief in either the facts pleaded or the inferences reasonably drawn therefrom. In this assessment we treat the facts averred as true and construe all averments liberally and favorably to the appellant. *Kanagawa v. State by and through Freeman,* 685 S.W.2d 831, 834 (Mo. banc 1985) (citations omitted).

 Appellant first alleges that because she lacked the capacity to execute a binding release the agreement is voidable. We agree.

 An infant's contractual capacity is limited. Their agreements are either void, or more often, voidable. JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 8.1 (2nd ed. 1977). Assuming that the signature appearing on the release is appellant's, she has the ability to void the contract and pursue her claim. Point one sustained.

The second claim of error is that appellant's mother had no authority to execute a release on behalf of her minor child and such action is in violation of § 507.184 RSMo Cum. Supp.1993. Put another way, does a parent, without court appointment as a guardian or next friend, have authority to contract away the minor child's claim for damages?

 Neither party has submitted authority concerning this precise issue and this court's research has not disclosed any authority which would clearly indicate the answer to this question. However, in deciding this issue, we must keep in mind that in any proceeding involving minors, they are to be considered "wards of the court and their rights are to be jealously guarded as provided by statute." *Morgan v. Morgan,* 289 S.W.2d 151, 153 (Mo.App.Spr.D.1956); *Quincy v. Quincy,* 430 S.W.2d 638, 642 (Mo.App. St.L.D.1968). The requirements for the settlement of a minor's claim are dictated by § 507.184 RSMo 1986. This section provides in relevant part:

2. The next friend, guardian ad litem or guardian or conservator shall have the power and authority to contract on behalf of the minor for a settlement of the minor's claim, action or judgment, provided that such contract and settlement shall not be effective until approved by the court. The next friend, guardian ad litem and guardian or conservator shall also have the power and authority to execute and sign a release or satisfaction and discharge of a judgment which shall be binding upon the minor, provided the court orders the execution of such release or satisfaction and discharge of judgment.

3. The court shall have the power and authority to hear evidence on and either approve or disapprove a proposed contract to settle an action or claim of a minor, to authorize and order the next friend, guardian ad litem or guardian or conservator to execute and sign a release or satisfaction and discharge of judgment. . . .

Based upon our research the terms "next friend", "guardian" and "conservator" in this statute must refer to duly-appointed persons and that a natural guardian would not be able to enter into a binding settlement of a minor's claim. *See Cox v. Wrinkle,* 267 S.W.2d 648, 652–3 (Mo.1954).[1] The requirement that even a parent be judicially-appointed the minor's representative gives the court the opportunity to determine whether the parent is qualified to enter into a settlement agreement on the child's behalf. The court may consider first, whether the parent has the necessary knowledge and ability to act under the circumstances and, second, whether a conflict of interest exists between the parent and the child. As our Supreme Court said in *Cox v. Wrinkle,* 267 S.W.2d at 653:

"If there is no duly appointed guardian or curator, the parent is ordinarily a proper person for appointment as a guardian *ad litem,* but not always. A parent, of course, generally has the interests of his child at heart. This does not mean a parent in all cases is qualified to represent his child in litigation. So it seems to us that, all related statutes considered, the legislature intended that the *regular guardian or curator, that is, the guardian or curator duly, legally or regularly appointed by the probate court,* has the duty to represent his ward as defendant in all legal proceedings, § 457.420 [RSMo 1949], and if an infant defendant has no regular guardian, then the circuit court, upon being advised of the infancy of such defendant, has the duty to appoint a guardian *ad litem,* § 507.190 et seq., . . ." *Id.* (citations omitted) (some emphasis added).

In *Cox* our Supreme Court affirmed the trial court's grant of a minor defendant's motion for a new trial due to the trial court's failure to appoint a guardian ad litem to represent the minor defendant. *Cox* did not involve a minor's settlement. However, our Supreme Court has emphasized that parents must comply with strict statutory requirements in order to represent their children in settlement proceedings, *Levin v. State Farm Mutual Automobile Ins. Co.,* 510 S.W.2d 455, 462 (Mo. banc 1974), and, that even if parents are duly-appointed, they may later be disqualified on the basis of a conflict of interest. *Vincent by Vincent v. Johnson,* 833 S.W.2d 859, 863 n. 3 (Mo. banc 1992); *See also,* § 475.097.2 RSMo 1986.

■ The holding that a minor's claims can only be settled by a duly-appointed representative is also supported by the statutory scheme when considered as a whole. There is no question that a minor cannot prosecute, *See* § 507.110 RSMo 1986; Rule 52.02(a), or defend, *See* § 507.190 RSMo 1986; Rule 52.-02(e); *Cox,* 267 S.W.2d at 653; *Quincy,* 430 S.W.2d at 642, an action without a duly-appointed representative.[2] These statutes reflect a legislative intent to maximize the protection afforded minors, an intent which is also apparent in § 507.150 RSMo Cum.Supp. 1993; Rule 52.02(h) (requires next friend or guardian ad litem receiving settlement funds to execute bond unless total value of property or money, exclusive of expenses and fees approved by court, is not in excess of ten thousand dollars *and* all of the money is to be turned over to minor or parent) and § 507.184.2–.3 RSMo 1986 (requires judicial

---

**1.** In *Cox,* 267 S.W.2d 648, our Supreme Court was interpreting § 457.420 RSMo 1949. Although this statute was repealed in 1955, it was replaced with §§ 507.110, 507.190, 507.184 and 475.130.4–.5(1)–(2) which serve similar purposes.

**2.** The "duly appointed" language was added to §§ 507.110 and 507.190 in 1983.

Rule 52.02(m) provides "failure to appoint a next friend or guardian ad litem for a minor . . .

shall not invalidate the proceedings if the court finds that the interests of the minor . . . were adequately protected." However, since we do not have any facts before us pertaining to National's employee's acts of assault and battery on the minor, which under our standard of review we must assume occurred, we cannot determine whether the minor's rights were adequately protected by the release agreement.

approval of a minor's settlement, *But see,* § 475.130.5(1)–(2) RSMo 1986). The "appointment of a guardian ad litem for a minor ... is not a bare technicality and ... the office does not involve mere perfunctory or shadowy duties." *Morgan,* 289 S.W.2d at 153 (citations omitted). *See also, Cox,* 267 S.W.2d 648. The presence of a guardian ad litem is considered "essential" to the validity of a binding adjudication against a minor, *Quincy,* 430 S.W.2d at 641. In order to further protect a minor's interest, the presence of a duly-appointed representative is necessary when a minor is engaged in settlement discussions to ensure that a settlement is in the best interest of the child.

National notes that § 507.184 RSMo 1986 has never been, and argues that it should never be, applied to pre-action settlements.[3] We disagree. The statute is concerned with "contracts on behalf of the minor for a settlement of the minor's *claim,* action or judgment." [emphasis added]. The word "claim" is defined as "Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, legal, equitable, mature, unmature, secure or unsecure." BLACK'S LAW DICTIONARY 247 (6th ed. 1990). It therefore may include either a pending or a pre-filed cause of action. Furthermore, the statutory scheme is replete with evidence of the legislative intent to maximize the protection afforded minor's legal actions. If §§ 507.184, 507.110 and 507.190 exist to protect a minor's rights during a suit, the legislature must certainly have intended to safeguard a minor's legal right to bring a suit.

■ Although under § 475.025 RSMo 1986 of the guardianship code, parents are considered the natural guardians of their children, and a parent may be judicially-appointed guardian ad litem or next friend in cases in which there is no conflict of interest, *see* § 475.097.2, we believe that our legislature has expressed its clear reluctance to consider parents "natural guardians" in cases in which a minor permanently abrogates his or her right to bring suit. We, therefore, hold that a parent cannot bargain away a

minor's right to bring a civil action against an alleged tortfeasor without being duly appointed. Point two sustained.

■ Appellant's third claim is that the release is contrary to public policy in Missouri and therefore it is unenforceable. Appellant argues that such an agreement is void due to illegality since "[a] contract made with the purpose and upon the consideration that a criminal prosecution shall be suppressed, stifled or stayed will not be enforced." *Ensminger v. Burton,* 805 S.W.2d 207, 217 (Mo. App.W.D.1991) (citing *McCoy v. Green,* 83 Mo. 626, 632 (1884); *Fidelity & Deposit Co. v. Grand Nat'l Bank of St. Louis,* 69 F.2d 177, 180 (8th Cir.1934); RESTATEMENT (SECOND) OF CONTRACTS § 178 (1979)).

In response, National cites *Town of Newton v. Rumery,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), in which the United States Supreme Court held that release-dismissal agreements are not *per se* illegal, *Id.* at 392, 107 S.Ct. at 1191, and argues that because the state has limited resources, it is sometimes in the public's interest for a merchant to refrain from pressing criminal charges against a minor. National claims that in arriving at such a decision the merchant can take into consideration factors such as: whether the merchandise was recovered; the value of the goods taken; whether the perpetrator is a first-time offender; whether the perpetrator appears repentant; and, in a case in which the perpetrator is a minor, whether a parent is available to take custody of the child and exhibits concern and an interest in dealing with the problem on his/her own. National argues that a shopkeeper may feel that the circumstances do not warrant pressing criminal charges but fear that the alleged perpetrator would use the merchant's decision to forego prosecution as evidence in a later civil action against the merchant. This concern, however, has been alleviated by our legislature. Merchants detaining suspected shoplifters are protected from frivolous civil actions by § 537.125.2 RSMo 1986 which reads:

Any merchant, his agent or employee, who has reasonable grounds or probable cause

---

3. In both *Vincent,* 833 S.W.2d 859, and *Levin,* 510 S.W.2d 455, the parties entered into a settlement after the action had already been commenced.

to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment, may detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating whether there has been a wrongful taking of such merchandise or money. *Any such reasonable detention shall not constitute an unlawful arrest or detention, nor shall it render the merchant, his agent or employee, criminally or civilly liable to the person so detained.* [emphasis added].

Furthermore, under § 570.087.6 RSMo Cum. Supp.1992: "[n]o owner or agent or employee of the owner may attempt to gain an advantage in a civil action by threatening to initiate a criminal prosecution pertaining to the same incident." Under § 575.020.1(1)–(2) RSMo 1986, the merchant, the minor child and her mother would be guilty of the crime of concealing an offense since the merchant conferred, and the minor or the mother accepted, "pecuniary benefit or other consideration in consideration of his concealing any offense, refraining from initiating or aiding in the prosecution of an offense or withholding any evidence thereof."[4]

■■■■ Moreover, National's reliance on *Town of Newton v. Rumery,* 480 U.S. 386, 107 S.Ct. 1187 is misplaced. In *Rumery,* the plaintiff was indicted for tampering with the complaining witness in an aggravated assault case. The prosecutor entered into an agreement not to proceed with criminal charges against Rumery in exchange for his agreement not to bring a 42 U.S.C. § 1983 action against the town. Rumery later claimed that the agreement was contrary to public policy since a person should not be asked to relinquish his/her right to bring civil charges against a town in exchange for a release from criminal liability. On appeal, the court upheld the agreement, taking into consideration the fact that the plaintiff was a learned person, represented by a criminal attorney who drafted the agreement and the plaintiff had several days to consider whether or not he should sign the contract. *Id.* at 394, 107

S.Ct. at 1192. In contrast to the situation in *Rumery,* plaintiff-appellant in the case at hand was eleven years old, unrepresented by an attorney or a duly-appointed next friend or guardian ad litem and being detained by National's security personnel at the time the agreement, which was drafted by National, was executed. The circumstances presented an extremely coercive situation for a young child. Perhaps the most important distinction in *Rumery* was that it was a prosecutor, a party presumed to be guided by "the independence of judgment required by [his] public trust," *Rumery,* 480 U.S. at 396, 107 S.Ct. at 1194 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 423, 96 S.Ct. 984, 991, 47 L.Ed.2d 128 (1976)), who made the strategic and calculated decision to forego pressing criminal charges. The prosecutor believed that requiring the complaining witness to testify against Rumery would add stress to an already traumatized witness, adversely affecting her ability to testify in the aggravated assault case, the more serious of the two cases. The gain to the public, the increase in the strength of its case against the defendant in the aggravated assault case, outweighed the loss it inured by not being able to prosecute a minor offender. In the case at hand, however, the party that agreed not to press criminal charges was a private entity who sought a *quid pro quo* from such a transaction through the avoidance of a civil suit. The public, therefore, lost its ability to prosecute a wrongdoer in order that a private citizen benefit. "The public has an interest in seeing its laws faithfully executed. But [one choosing to settle a suit] may give more weight to the private interest in seeing a civil claim settled than to the public interest in seeing the guilty convicted. By introducing extraneous considerations into the criminal process, the legitimacy of that process may be compromised." *Rumery,* 480 U.S. at 400, 107 S.Ct. at 1195 (O'Connor, J., concurring in part and concurring in the judgment). It would impede society's ability to fight crime if victims based their decisions on whether to bring criminal charges against perpetrators on whether they could financially profit from

---

4. In this case, the suppression of criminal charges in exchange for an agreement not to bring a civil action would constitute a class A misdemeanor. If the agreement were designed to suppress felony charges, both parties would be guilty of a class D felony under § 575.020.2 RSMo 1986.

not bringing such charges. We therefore follow *Ensminger,* 805 S.W.2d at 217, for its holding that a private citizen or entity may not contract away his/her right to press criminal charges against the perpetrator of a crime. National argues that the release should still be upheld because it could also be interpreted to be a lawful agreement by National not to institute a civil action against the minor, which National had the right to do under § 570.087.2–.3 RSMo 1986.[5] We note that a contract which has several items of consideration, one sufficient and one insufficient, may be upheld on the strength of the valid consideration. JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 4.23 (2nd. ed. 1977) (citing ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 126 (1952) (further citations omitted)). However, "one who gives illegal consideration for a promise is not given a remedy to enforce [the contract] ..." even if he or she offers a second and lawful consideration. CORBIN, § 126. National's inability to enforce the release is not due to lack of consideration, but rather it is due to public policy reasons.[6] *Id.* Furthermore, since the minor or her parent violated the law by entering into such a contract, *see* § 575.020.1(2), they are also unable to enforce National's promise. *Id.* at § 147.

Judgment reversed and remanded.

SIMON, P.J., and KAROHL, J., concur.

---

**5.** In the agreement, National relinquished its right to "prosecute" appellant. While we concede that the word "prosecute" can be used to denote the bringing of a civil suit, we believe that it more commonly refers to the institution of a criminal action. *See* definition of "prosecution" BLACK'S LAW DICTIONARY 1221 (6th ed. 1990). A merchant's use of the word "prosecute" in a release agreement, in light of our holding that one cannot bargain away the right to bring criminal charges, would inherently mislead the general public. Insomuch as the terms of a release must be "clear, precise and unequivocal" in order that the release be binding, *Ensminger,* 805 S.W.2d at 217 (citing *Jenkins v. Simmons,* 472 S.W.2d 417, 420 (Mo.1971), and the use of the word "prosecute" in its most commonly-recognized sense would lead to an illegal agreement, the agreement fails for illegality or ambiguity and vagueness.

**6.** We note that in *Ensminger* the court said that "where the act of a party may be referred indifferently to one of two motives, the law prefers to refer it to that which is honest, rather than to that which is dishonest." 805 S.W.2d at 217 (quoting *Fidelity & Deposit Co.,* 69 F.2d at 183 (citations omitted); ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1521 (1962)). However, in *Ensminger,* the purpose of the suspect payment was in dispute, whereas, in the case at hand, National has conceded through its argument that part, if not all, of its agreement was to refrain from pressing criminal charges against appellant.