

# In the
# Missouri Court of Appeals
# Western District

KEYEN BRAUGHTON, A MINOR,       )
AND KONNOR BRAUGHTON, A          )
MINOR, BY AND THROUGH            )   WD77686
CONSERVATORS, DAVID AND          )
MICHELLE BRAUGHTON,              )   OPINION FILED:  March 17, 2015
                                 )
    Respondents,            )
                                 )
v.                               )
                                 )
ESURANCE INSURANCE               )
COMPANY,                         )
                                 )
    Appellant.              )

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Larry D. Harman, Judge

Before Division One:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Mark D. Pfeiffer, Judge

Esurance Insurance Company ("Esurance") appeals a judgment in favor of Keyen

Braughton and Konnor Braughton (collectively "Minors") for breach of an insurance

contract following the wrongful death of their mother, the named insured on the

insurance contract ("Judgment").  The Judgment found that Esurance breached the

insurance contract with the Minors by failing to pay uninsured motorist proceeds as

directed by an earlier judgment approving a wrongful death settlement. Esurance argues that the judgment allocating proceeds to the Minors followed an even earlier judgment which allocated proceeds to the Minors' father, and which authorized father to sign a release individually and on behalf of all wrongful death beneficiaries. Esurance thus argues that it was released from all liability to the Minors under the insurance contract.

The trial court's Judgment finding that Esurance breached its insurance contract with the Minors is affirmed, though for reasons other than those set forth in the Judgment. The Judgment's award of damages is affirmed in part and reversed in part.

## Factual and Procedural History

On May 15, 2010, Julie Braughton ("Mother") was killed in a car accident when her vehicle was struck by an uninsured motorist. Mother was survived by her husband, Joseph Braughton ("Father"), the Minors, and her parents, Ernie and Sandra Gibbs (collectively "Grandparents"). At the time of the accident, Mother was insured by an automobile policy issued by Esurance with combined uninsured motorist ("UM") coverage of $150,000.

On July 21, 2010, Father signed a settlement and release of claims ("Release") with Esurance. Father signed the Release individually and as class representative of all those entitled to recover for the wrongful death of Mother pursuant to section 537.080.[1] The Release described the consideration as $150,000, the full extent of the UM coverage, and released Esurance and its agents from all claims relating to Mother's accident "specifically limited to any and all claims made under or relating to the Esurance

---

[1] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

Insurance Company, Policy Number PAMO-003506483."  The Release also described the allocation of the UM coverage such that $143,612.25 would be paid to Father, and $6,387.75 would be paid to resolve a hospital lien.  The Release was accompanied by affidavits signed by Grandparents confirming their agreement with the terms of the Release and with the allocation of the UM proceeds.

**Proceedings in 10CY-CV08631**

On July 28, 2010, Esurance prepared and filed a petition for "Approval of Wrongful Death Settlement" in the Clay County Circuit Court.  The petition named Father, the Minors, and Grandparents, as plaintiffs, and Esurance as defendant.  The petition identified Father as "class representative" of the class of persons entitled to bring a wrongful death claim pursuant to section 537.080.  The petition noted that the named plaintiffs had made a claim against Esurance as a result of Mother's accident, referenced the agreement reached to resolve the claim by paying out the UM policy limits in the manner allocated in the Release, and noted that the settlement would "serve to extinguish any and all claims of Plaintiffs against Defendant arising from the insurance policy obtained by decedent from Defendant."  None of the plaintiffs identified in the petition were represented by counsel.  Though the Minors were named plaintiffs in the proceeding, they were not represented by a duly-appointed next friend, guardian, or conservator.

A hearing was conducted on August 13, 2010.  Father and the Minors attended the hearing, along with an attorney for Esurance.  Esurance called Father to testify, and Father reiterated the terms of the settlement and Release as outlined in the petition.

3

Father testified that the settlement was in the best interests of Father, the Minors, and Grandparents and requested approval of the settlement and Release. When asked by the trial court, Father confirmed that the Minors lived with him, that he was still serving as their natural father and natural guardian, and that he was taking care of their needs.

The trial court orally approved the settlement at the hearing. Esurance tendered a check to Father for $143,612.25 on the record, and Father acknowledged receipt of the check.

On August 13, 2010, the trial court entered its "Order and Judgment Approving Wrongful Death Settlement" ("Settlement Judgment"). The Settlement Judgment found the settlement between Esurance and the plaintiffs to be "fair and reasonable," and approved distribution of the $150,000 settlement amount in the manner set forth in the Release. The Settlement Judgment noted that Father "is hereby authorized and has executed a Release as class representative of Plaintiffs, thereby releasing all claims which Plaintiffs have and may have against [Esurance]."

On September 23, 2010, a satisfaction of judgment signed by Father was filed which stated that Father, as class representative for himself, the Minors, and Grandparents, had received a check for $143,612.25 in satisfaction of the Settlement Judgment entered on August 13, 2010.

On November 2, 2010, Father was indicted on four counts of second degree statutory sodomy. Father was arrested on November 4, 2010, and was thereafter in jail pending trial.

4

David and Michelle Braughton were appointed conservators ("Conservators") for the Minors on July 7, 2011. On July 26, 2011, the Minors, by and through the Conservators, filed a motion to set aside the Settlement Judgment pursuant to Rule 74.06(b). The motion argued that the Minors had not been given notice of the earlier settlement hearing,[2] and that in any event, Rule 52.02[3] was violated because no next friends or guardians were appointed for the Minors in connection with the settlement. The motion informed the trial court about Father's most recent indictment; that Father had previously been indicted on May 29, 2007, for first degree child molestation, second degree child molestation, and second degree statutory sodomy; and that Father had thereafter been out on bond until his new charges and arrest in November 2010. The motion also advised the trial court that at the time of the August 13, 2010 hearing, everyone was under the impression that the settlement proceeds were being allocated to Father for the care of the Minors but that the settlement proceeds had not been so used by Father. The Minors thus argued that the Settlement Judgment was procured by mistake, fraud, or misrepresentation, and should be set aside.

The trial court conducted a hearing on the Minors' motion on August 3, 2011. Esurance argued that its UM coverage had already been paid out in exchange for the Release, and that the Settlement Judgment had been satisfied. Esurance also argued that Rule 52.02 does not apply to wrongful death settlements, and that even if it did, the

---

[2]The Minors later acknowledged that they had notice of the settlement hearing, and had in fact been present during the hearing, leaving the alleged violation of Rule 52.02 as the only basis for requesting that the Settlement Judgment be set aside.

[3]All references to Rules are to *Missouri Court Rules, Volume I -- State, 2014*, unless otherwise noted.

Minors' interests were adequately protected as reflected by the trial court's inquiry of Father during the settlement hearing.

On August 4, 2011, the trial court entered an order that granted, *in part*, the Minors' motion to set aside the Settlement Judgment. The order provided, in pertinent part:

> That portion of [Settlement Judgment] that allocates and apportions the sum of $143,612.25 to [Father] is set aside and vacated. The Court finds that [Father] had a conflict of interest with other members of the class entitled to bring an action for wrongful death and that the judgment allocating $143,612.25 was obtained by fraud and/or misrepresentation. ***The remaining aspects of [Settlement Judgment] remain in full force and effect***. An allocation of proceeds of the settlement shall be made following hearing at a mutually agreed time, or as set by the Court.

(Emphasis added.)

A hearing to allocate settlement proceeds was held on September 28, 2011. At the conclusion of the hearing, Esurance asked the trial court to confirm that the Release remained in force and effect since the August 4, 2011 order only set aside that portion of the Settlement Judgment allocating settlement proceeds, and did not expressly set aside that portion of the Settlement Judgment which authorized and acknowledged Father's execution of the Release "thereby releasing all claims which Plaintiffs have and may have against [Esurance]." The trial court responded only that the August 4, 2011 order spoke for itself.

On October 11, 2011, the trial court entered a second judgment "Approving Wrongful Death Settlement and Apportioning Proceeds" ("Second Settlement Judgment"). The Second Settlement Judgment found that Father, the Minors, and

6

Grandparents were the only members of the class of beneficiaries pursuant to section 537.080 entitled to make a claim for the wrongful death of Mother and that Father had not appeared at the hearings conducted in connection with the Minors' motion to set aside the Settlement Judgment.[4] The Second Settlement Judgment concluded that the "proposed settlement" of $150,000 was fair and reasonable and ordered the settlement approved. The Second Settlement Judgment ordered that the "proposed settlement" "shall be divided" such that the Minors would each be paid $70,000, Father would be paid $3,612.25, and the hospital holding a lien would be paid $6,387.75. The Second Settlement Judgment did not address who would be responsible for this division of proceeds. Other than identifying Esurance as having appeared in the proceeding, the Second Settlement Judgment made no other reference to Esurance. Specifically, the Second Settlement Judgment did not order Esurance to pay anyone, did not mention Mother's insurance policy, and did not address the previously executed Release and satisfaction of judgment. No appeal was taken from the Second Settlement Judgment.

**Proceedings in 12CY-CV01274/12CY-CV03550**

On November 14, 2011, the Minors sent Esurance a letter demanding payment of $70,000 to each of them pursuant to the Second Settlement Judgment. However, the Minors took no action to execute on the Second Settlement Judgment.

Instead, on February 3, 2012, and on April 4, 2012, the Minors each filed a lawsuit against Esurance claiming breach of contract, breach of fiduciary duty, and vexatious

---

[4]Father was in jail, pending trial, at the time of the hearings conducted in connection with the Minors' motion to set aside the Settlement Judgment. Father filed no responsive pleading with the trial court in connection with the Minors' motion.

7

refusal to pay. The breach of contract claim in each petition asserted that Mother was the named insured on the relevant Esurance policy; that the Minors were third party beneficiaries of the policy; that the trial court had set aside the Settlement Judgment and had entered the Second Settlement Judgment; that Esurance "has refused to honor the insurance contract with [the Minors] and has refused to pay [the Minors] pursuant to the [Second Settlement Judgment];" and that "[i]n refusing to pay the insurance proceeds to [the Minors], [Esurance] has breached its insurance contract with [the Minors]." The Minors sought damages in the amount of $70,000 each, plus damages for vexatious refusal to pay pursuant to sections 375.296 and 375.420.

The Minors' lawsuits were assigned to the same trial judge who entered the Settlement Judgment and the Second Settlement Judgment. The parties filed competing motions for summary judgment, and then agreed to submit the lawsuits on stipulated facts ("Stipulation") for a trial to the court. The Stipulation provided, in pertinent part, that: (i) Mother had UM coverage under the relevant Esurance policy in the amount of $150,000; (ii) that Father entered into the Release in exchange for Esurance's payment of $150,000; (iii) that Father claimed in the Release to be the class representative for all beneficiaries of a wrongful death claim pursuant to section 537.080; (iv) that the petition to approve the wrongful death settlement was filed by Esurance; (v) that the trial court entered the Settlement Judgment approving settlement which resulted in Esurance paying out its UM policy limits; and (vi) that a satisfaction of the Settlement Judgment had been filed. The Stipulation incorporated by reference all of the arguments advanced in the parties' summary judgment pleadings, and deemed all exhibits attached to the parties' summary

judgment pleadings admitted into evidence. Mother's insurance policy was not attached to any of the summary judgment pleadings and was not among the exhibits admitted into evidence.

On May 27, 2014, the trial court entered a judgment denominated "Final Judgment" ("Judgment"). The trial court found that "[Esurance] has not paid the insurance policy proceeds to each [Minor] as Ordered on October 11, 2011 [the Second Settlement Judgment] and is therefore in breach of [Esurance's] insurance contract with [the Minors]." The Judgment ordered Esurance to pay each of the Minors $86,414.52, calculated as "the $70,000 of insurance coverage Ordered paid on October 11, 2011 plus interest pursuant to Missouri Revised Statute section 408.040[5] at the legal rate of nine percent per annum." The Judgment expressed that it "resolve[d] all issues between all parties and is therefore a final judgment."[6]

Esurance timely filed this appeal.

## Standard of Review

"In reviewing [a] court-tried case, we must affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Carlyle v. Missouri Dept. of Corr.*, 184 S.W.3d 76, 79 (Mo. App. W.D. 2005) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "When, as here, a court-tried case is submitted on stipulated

---

[5]Section 408.040 addresses post-judgment interest and provides for the accrual of interest at the rate of nine percent per annum "on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until satisfaction be made . . . ." Section 408.040.2.

[6]The stipulated record on which this case was tried supports the conclusion that this statement in the Judgment reflected the denial of the Minors' claims for breach of fiduciary duty and for vexatious refusal to pay. The Minors did not appeal the denial of these claims.

9

facts, we need only determine whether the trial court drew the proper legal conclusions from the facts stipulated." *Id.* (internal quotations omitted). "Questions of law are reserved for the independent judgment of the appellate court without deference to the trial court's determination." *Id.*

**Analysis**

Esurance asserts a single point on appeal. Esurance alleges that the trial court's Judgment finding that it breached an insurance contract by failing to pay the Minors $140,000 plus post-judgment interest as allegedly ordered by the Second Settlement Judgment was erroneous because the Minors were bound by the Settlement Judgment's approval of the Release which released Esurance from further claims on its insurance policy.[7] The Minors respond that the Settlement Judgment was set aside and that Esurance failed to pay the Minors as ordered by the Second Settlement Judgment.

The procedural history of this case has generated a Gordian knot, disentanglement of which, though challenging, presents a straightforward question: did the Release and Settlement Judgment bind the Minors? We work our way backwards through the judgments that have been entered to explain why we conclude that the Release and Settlement Judgment did not bind the Minors.

The Judgment found that Esurance breached its insurance contract with the Minors. "A breach of contract action includes the following essential elements: (1) the

---

[7]In the argument portion of its Brief, Esurance asserts three subparts to its point relied on. Subpart one argues that the Minors' claims were satisfied by the payment made pursuant to the Settlement Judgment. Subpart two argues that tender of the settlement proceeds to Father barred the Minors from pursuing a breach of contract claim under Mother's insurance policy. Subpoint three alleges that the appointment of a next friend is not required for minors in connection with the settlement of a wrongful death claim.

existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. banc 2010).

With respect to the first essential element--the existence of a contract and its terms--the Judgment finds that Esurance breached its "insurance contract with [the Minors]." The parties' stipulated that Esurance had a policy of insurance with Mother, and that the insurance contract included $150,000 in UM coverage. The stipulated record at trial, which included the summary judgment pleadings, reflects that the parties agreed that Mother's policy obligated Esurance to pay its UM coverage to Mother's statutory wrongful death beneficiaries and that the Minors were members of the class of Mother's statutory wrongful death beneficiaries. Upon Mother's wrongful death, the Minors thus became insureds entitled to make a first-party claim against her policy. The trial court properly found, therefore, that there was a contract of insurance between Esurance and the Minors.

The second essential element of a breach of contract claim is also uncontested. The Minors became first-party insureds contractually entitled to share in the UM proceeds by virtue of their status as Mother's wrongful death beneficiaries. No other performance is alleged to have been required of them as a condition to their right to payment of those proceeds.

Regarding the third essential element, breach of the insurance contract by Esurance, the Judgment found that "[Esurance] *has not paid the insurance policy*

11

***proceeds to [the Minors] as ordered on October 11, 2011***, and ***is therefore in breach*** of [its] insurance contract with [the Minors]." (Emphasis added.) The reference to October 11, 2011, is, of course, a reference to the Second Settlement Judgment. The trial court's finding that Esurance breached the insurance contract by failing to make a payment ordered by the Second Settlement Judgment is legally erroneous.

The Second Settlement Judgment does not mention the insurance contract. The Second Settlement Judgment does not order Esurance to pay the Minors insurance proceeds or any sum for that matter. When the Second Settlement Judgment was entered, the trial court knew that Esurance had already paid Father the extent of its UM coverage in exchange for a Release authorized and approved by the Settlement Judgment. Yet, the Second Settlement Judgment did not set aside the Settlement Judgment's authorization of Father's execution of the Release. And though the Second Settlement Judgment approved the division of "proposed settlement" proceeds, it did not declare Esurance responsible for that division. Rather, because the trial court described the Second Settlement Judgment as the approval of a "wrongful death settlement," (albeit mistakenly as we discuss, *infra*),[8] we must assume that the trial court knew that section 537.095.4(4) imposes the duty to divide wrongful death settlement proceeds as ordered by a court ***on***

---

[8]We address, *infra*, why neither the Settlement Judgment nor the Second Settlement Judgment approved wrongful death settlements, notwithstanding the title of each judgment. First-party insurance claims are contract claims, a substantive reality that is not altered by the fact that the claims are triggered by the wrongful death of a named insured.

12

***the claimant*** who is acting as the representative of all wrongful death beneficiaries.[9]
Here, that was Father.

As a result, the Judgment erroneously found that Esurance breached its insurance contract with the Minors *because* it failed pay insurance proceeds as ordered by the Second Settlement Judgment. On this point, it is no coincidence that the Minors never attempted to collect payment from Esurance by executing on the Second Settlement Judgment. Instead, the Minors filed breach of contract lawsuits--a step that would have been unnecessarily duplicative had the Second Settlement Judgment in fact ordered Esurance to make specific payments to the Minors.

We conclude, therefore, that the trial court's finding that Esurance breached its contract of insurance with the Minors cannot be affirmed on the basis described in the Judgment. However, we are nonetheless obligated to "'uphold the judgment of the trial court under any reasonable theory pleaded and supported by the evidence.'" *Williams v. Williams*, 99 S.W.3d 552, 556 (Mo. App. W.D. 2003) (quoting *H.S. v. Board of Regents, Southeast Mo. State Univ.*, 967 S.W.2d 665, 668 (Mo. App. E.D. 1998)).

In their petitions, the Minors alleged that "[i]n refusing to pay the [UM proceeds] to [the Minors], [Esurance] has breached its insurance contract with [the Minors]." Fairly read, the petitions pled a general claim for breach of contract based solely on the fact that the Minors received no insurance proceeds from Esurance--an allegation of breach that is independent of the Second Settlement Judgment.

---

[9] Section 537.095.4(4) obligates the "claimant" (here, Father) "[t]o distribute the net proceeds [of any wrongful death judgment or settlement] as ordered by the court."

13

Based on the stipulated trial record, it is uncontested that Esurance paid no portion of the UM proceeds directly to the Minors though the Minors were contractually entitled to share in the UM proceeds. The uncontested facts thus establish an alternative basis to affirm the trial court's finding that Esurance breached its insurance contract. However, Esurance asserted affirmative defenses that would, if established, negate a payment obligation to the Minors. In order to affirm the Judgment, we must determine whether the stipulated trial record permitted the trial court to reject those affirmative defenses.

Esurance asserted that "it substantially complied with the terms of [Mother's insurance policy]," and that it "substantially complied with the terms of the [Settlement Judgment]." In connection with both assertions, Esurance claimed that the Minors' claim of breach of contract was "barred by the defense of payment and release . . . pursuant to the executed [Release] . . . and the Satisfaction of Judgment . . . ."

There is no evidence in the record to support Esurance's affirmative defense of payment and release based on "substantial compliance" with Mother's insurance policy. Though no one contests that Esurance paid out the extent of its UM coverage, it paid no amount of that coverage to the Minors, and paid nearly all of the coverage to Father. There is no evidence that this "substantially complied" with the policy provisions, as the policy was not introduced into evidence. It was Esurance's burden to introduce evidence at trial to establish its affirmative defense. *Warren v. Paragon Technologies Group, Inc.*, 950 S.W.2d 844, 846 (Mo. banc 1997) ("A defendant has the burden to prove all affirmative defenses."). Given our obligation to affirm the Judgment on any basis supported by the record, we conclude that the trial court properly rejected the affirmative

14

defense of payment and release based on substantial compliance with the insurance policy.

Esurance's affirmative defense of payment and release based on "substantial compliance" with the Settlement Judgment presents a more complicated inquiry. That defense required Esurance to prove that the Settlement Judgment was legally binding on the Minors. Esurance did not meet this burden because the Minors, who were named plaintiffs in the proceedings giving rise to the Settlement Judgment, were not represented by a duly-appointed next friend or guardian as required by law.

Section 507.110 provides that "[s]uits by infants may only be commenced and prosecuted, either: First, by a duly appointed guardian or conservator of such infant; or, second by a next friend appointed for him in such suit; or, third, if asserted by counterclaim, by a guardian ad litem." Section 507.115 defines "infant" as "any person who has not attained the age of eighteen years."

Section 507.184 provides, in pertinent part:

2. The next friend, guardian ad litem or guardian or conservator shall have the power and authority to contract on behalf of the minor for a settlement of the minor's claim, action or judgment provided that such contract and settlement shall not be effective until approved by the court. The next friend, guardian ad litem and guardian or conservator shall also have the power and authority to execute and sign a release or satisfaction and discharge of a judgment which shall be binding upon the minor, provided the court orders the execution of such release or satisfaction and discharge of judgment.

3. The court shall have the power and authority to hear evidence on and either approve or disapprove a proposed contract to settle an action or claim of a minor, [and] to authorize and order the next friend, guardian ad litem or guardian or conservator to execute and sign a release or satisfaction and discharge of judgment . . . .

15

Section 507.184 applies equally to pending lawsuits and to "pre-action settlements." *Y.W. By and Through Smith v. National Super Markets, Inc.*, 876 S.W.2d 785, 789 (Mo. App. E.D. 1994) (holding that reference to the word "claim" in section 507.184.2 refers to "either a pending or a pre-filed cause of action," and that the statutory scheme exists "to protect a minor's rights during a suit," and "a minor's legal right to bring a suit").

Here, the Release purported to release Esurance from any further claims by the Minors under the insurance policy. Pursuant to section 507.184, the Release could not be effective for this purpose unless it was duly approved by the trial court. The Settlement Judgment purported to serve as that approval, as it authorized Father to sign the Release and noted that the Release would thereafter bar the "Plaintiffs," including the Minors, from bringing further claims on the insurance policy.

However, pursuant to section 507.184, the trial court *had no authority* to approve a settlement for the Minors or to authorize execution of the Release on the Minors' behalf, because the Minors (who were named plaintiffs in the proceeding) were not represented by a duly-appointed next friend, guardian, or conservator. With respect to the Minors, therefore, the Settlement Judgment was entered in excess of the trial court's authority.

However, the Settlement Judgment was not void *ab initio* as to the Minors, but was instead merely voidable. Rule 52.02, which derives from section 507.110 *et. seq.*, provides that the "[f]ailure to appoint a next friend or guardian ad litem for a minor or a mentally or physically infirm person *shall not invalidate the proceedings **if the court finds that the interests of the minor or the mentally or physically infirm person were***

16

*adequately protected*." Rule 52.02(m) (emphasis added). Thus, where a trial court has personal jurisdiction over a minor, as where the minor is named as a plaintiff in a proceeding, a judgment entered by the trial court is not void. However, if the minor was not represented by a duly-appointed next friend or guardian, any judgment entered by the trial court in the proceeding is voidable *unless* it is demonstrated that the minor's interests were adequately protected.

Because the Settlement Judgment was merely voidable, it was essential for the Minors to seek relief from the Settlement Judgment pursuant to Rule 74.06(b).[10] *Cf. Kerth v. Polestar Entertainment*, 325 S.W.3d 373, 388-89 (Mo. App. E.D. 2010) (holding that void judgments include those where a trial court never acquired personal jurisdiction over a party, and that such judgments are nullities at their inception not subject to the restraints of Rule 74.06(b)); *State ex rel. Houston v. Malen*, 864 S.W.2d 427, 430 (Mo. App. S.D. 1993) (holding that Rule 74.06(b) applies to "voidable judgment[s] subject to attack" but not to judgments that are void from their inception). The Minors' Rule 74.06(b) motion sought to set aside the Settlement Judgment because no next friend or guardian was duly-appointed to represent their interests. Pursuant to the plain language

---

[10]Had the Minors *not* been named as plaintiffs in the proceeding giving rise to the Settlement Judgment, then the Minors arguably would *not* have been required to file a Rule 74.06(b) motion seeking to set aside the Settlement Judgment as a precondition to pursuit of an independent claim for breach of contract, as it is axiomatic that a judgment purporting to impair their individual claims would not be binding on them if they were not named as parties. In stark contrast, in wrongful death cases, the *only* recourse available to a wrongful death beneficiary after entry of a judgment approving a wrongful death settlement is to seek relief from the judgment pursuant to Rule 74.06(b), as a class representative's actions in securing settlement approval under section 537.095.1 is statutorily binding on all wrongful death beneficiaries, whether or not they are named as a parties to the proceedings. *See* section 537.095.1; *Davis v. Wilson*, 804 S.W.2d 392 (Mo. App. W.D. 1991); *Snead by Snead v. Cordes by Golding*, 811 S.W.2d 391 (Mo. App. W.D. 1991). For reasons we explain, *infra*, the Settlement Judgment did *not* involve the settlement of a wrongful death claim.

of Rule 52.02(m), the Settlement Judgment was invalid as to the Minors *unless* the trial court found that the Minors' interests were adequately protected in those proceedings.

When it ruled on the Minors' Rule 74.06(b) motion, the trial court did not make the required finding that the Minors' interests were adequately protected by Father. The trial court found to the contrary. The trial court held in its August 4, 2011 order that Father had a "conflict of interest with other members of the class entitled to bring an action for wrongful death." This finding necessitates the conclusion that, *as to the Minors*, the Settlement Judgment proceedings were invalid in their entirety. Rule 52.02(m). Though the trial court's August 4, 2011 order expressed the set aside *only* of that portion of Settlement Judgment which allocated proceeds, and expressed the intent to leave the balance of the Settlement Judgment intact, that order must be read in conjunction with the separate finding that the Minors were not adequately represented in the Settlement Judgment proceedings. In other words, because the Minors were not adequately represented in the settlement proceedings, the Settlement Judgment was not binding on the Minors as a matter of law, but remained binding on all other participants in those proceedings except to the extent expressly set aside.

Esurance argues in this appeal that the Minors were adequately represented in the Settlement Judgment proceedings because Father was the natural guardian of the Minors and can be safely viewed as having represented the Minors' interests. Alternatively, Esurance argues that Rule 52.02 does not apply to the settlement of statutory wrongful death actions given the statutory right to settle such claims with a single class representative described in section 537.095.1. Esurance raised these same arguments in

18

defense of the Minors' Rule 74.06(b) motion, to no avail. Yet, Esurance did not appeal the Second Settlement Judgment. The claims it raises here defending the failure to appoint the Minors a next friend or guardian arguably constitute improper collateral attacks on the Second Settlement Judgment. *See Reimer v. Hayes*, 365 S.W.3d 280, 283 (Mo. App. W.D. 2012) (holding that attack on a judgment "in other ways than by proceedings in the original action to have it vacated or reversed or modified . . . is a collateral attack") (internal quotations omitted).

We are reluctant, however, to dispense with Esurance's contentions in this fashion. The finding in the trial court's August 4, 2011 order regarding Father's conflict of interest was not repeated in the Second Settlement Judgment. And although incorporation of the August 4, 2011 order into the Second Settlement Judgment is arguably implied, we can understand how Esurance might have believed that the Second Settlement Judgment aggrieved only Father, the "claimant" obligated by section 537.095.4(4) to distribute "wrongful death" proceeds as ordered by a trial court.[11] We thus elect to review Esurance's contentions defending the failure to appoint a next friend or guardian for the Minors in the Settlement Judgment proceedings.

There is no merit to Esurance's contention that Father can be presumed to have represented the Minors' best interests. In *Cox v. Wrinkle*, 267 S.W.2d 648, 653 (Mo. 1954), our Supreme Court found that even though a parent generally has the interests of his child at heart, "[t]his does not mean a parent in all cases is qualified to represent his

_____

[11]Again, as we discuss, *infra*, the Second Settlement Judgment did not involve the settlement of wrongful death claims, although the trial court was operating under the misapprehension that it did.

child in litigation." *See also Levin v. State Farm Mutual Automobile Ins. Co.*, 510 S.W.2d 455, 462 (Mo. banc 1974) (parents must comply with the statutory requirements in order to represent their children in settlement proceedings); *Vincent by Vincent v. Johnson*, 833 S.W.2d 859, 863 n. 3 (Mo. banc 1992) (even if parents are duly appointed, they may be later disqualified because of a conflict of interest with their minor children). In fact, the Eastern District has expressly concluded that "the terms 'next friend,' 'guardian' and 'conservator' in [section 507.184] must refer to duly-appointed persons and . . . a natural guardian [is] not . . . able to enter into a binding settlement of a minor's claim." *Y.W.*, 876 S.W.2d at 788. "The requirement that even a parent be judicially-appointed the minor's representative gives the court the opportunity to determine whether the parent is qualified to enter into a settlement agreement on the child's behalf" by considering "whether the parent has the necessary knowledge and ability to act under the circumstances and . . . whether a conflict of interest exists between the parent and the child." *Id.* "[T]he presence of a duly-appointed representative is necessary when a minor is engaged in settlement discussions to ensure that a settlement is in the best interest of the child." *Id.* at 789.

Nor is there any merit to Esurance's contention that the requirements of Rule 52.02 do not apply to wrongful death proceedings because section 537.095.1 expressly authorizes one wrongful death beneficiary to serve as the "class representative" for all beneficiaries, whether or not named. Section 507.110, *et seq.* (from which Rule 52.02 derives) plainly and unambiguously applies to all "suits" by "infants." Rule 52.02 plainly and unambiguously applies to all "[c]ivil actions by minors." The Minors were named

20

plaintiffs in the proceedings giving rise to the Settlement Judgment. We are aware of no authority, and Esurance cites to none, that exempts wrongful death actions or settlements naming minors as parties from the unambiguous requirements of section 507.110, *et. seq.* and of Rule 52.02.[12] Instead, it is settled that "***in any proceeding*** involving minors, they are to be considered wards of the court and their rights are to be jealously guarded as provided by statute." *Y.W.*, 876 S.W.2d at 787 (internal quotations omitted) (emphasis added).

There is an even more fundamental problem with Esurance's reliance on section 537.095 to excuse the failure to duly-appoint a next friend or guardian to represent the Minors in the Settlement Judgment proceedings. At nearly every stage in this case, the parties and the trial court have mistakenly characterized Esurance's settlement with its first-party insureds as the settlement of a wrongful death claim. Though it may be a common practice to voluntarily seek court approval of a settlement of first-party UM claims arising out of the wrongful death of a named insured, the settlement of such claims is ***not*** a wrongful death settlement.

Section 537.080 describes the statutory action for wrongful death. It provides, in pertinent part:

---

[12]We are mindful that section 537.095.1 permits one member of a class of wrongful death beneficiaries to initiate suit or settlement of a wrongful death claim on behalf of the entire class, and without naming as parties each member of the class, so long as notice as required by section 537.095.1 has been "diligently attempted" by the person acting as a class representative. Here, even if we assume that the Settlement Judgment in fact approved a "wrongful death settlement," (which, as we explain, *infra*, it did not), the Minors were named plaintiffs in the petition seeking approval of the settlement. Thus, section 537.095.1's discussion of class representatives for unnamed wrongful death beneficiaries affords Esurance no basis to defend the failure to seek appointment of a next friend or guardian for the Minors.

We express no opinion on the binding effect of a wrongful death settlement on minors who are not named as parties to a wrongful death settlement proceeding, and for whom no next friend or guardian has been named, though we observe that proof of notice to the minor sufficient to comply with section 537.095.1 without the appointment of a next friend or guardian may be problematic.

21

1.      Whenever the death of a person *results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof*, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for:

(1)      By the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive. . . .

. . . .

2.      Only one action may be brought under this section against any one defendant for the death of any one person.

(Emphasis added).  Section 537.085 provides:

*On the trial of such action to recover damages for causing death*, the defendant may plead and prove as a defense any defense which the defendant would have had against the deceased in an action based upon the same act, conduct, occurrence, transaction, or circumstance which caused the death of the deceased, and which action for damages the deceased would have been entitled to bring had death not ensued.

(Emphasis added.)   Section 537.080 and section 537.085 instruct that wrongful death claims can be brought *against those who wrongfully cause a death*.  Consistent with this rather obvious observation, our courts have held that "the manifest purpose of the wrongful death statute is to provide compensation for the loss of the companionship, comfort, instruction, guidance and counsel, etc., to statutorily designated, and hence a limited number, of relatives of a decedent wrongfully killed *by a tortfeasor*." *Denton v. Soonattrukal*, 149 S.W.3d 517, 524 (Mo. App. S.D. 2004) (emphasis added).

Mother's death did not "result[] from any act, conduct, occurrence, transaction, or circumstance" engaged in by Esurance.  Section 537.080.1.  In plain speak, Esurance did

22

not cause Mother's death. Section 537.085. Esurance is not a tortfeasor against whom a wrongful death claim could have been asserted. Though Esurance's first-party liability to Mother's wrongful death beneficiaries was triggered by Mother's wrongful death, Esurance did not cause Mother's wrongful death. The rights of Mother's wrongful death beneficiaries to recover under Mother's insurance policy are thus a function of the insurance contract. *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726, 732 (Mo. banc 1979) (holding that an action to recover uninsured motorist proceeds following the wrongful death of a named insured "is an action on the insurance contract").

Telling on this point, the Minors have not sued Esurance for wrongful death. They have sued Esurance for breach of contract based on its failure to pay them any portion of the UM proceeds.

Thus, the claims Esurance hoped to settle when it entered into the Release with Father were contract claims, not wrongful death claims. Esurance's petition for "Approval of Wrongful Death Settlement" acknowledged as much. It alleged that the settlement for which approval was sought would "serve to extinguish any and all claims of Plaintiffs against [Esurance] arising from the insurance policy obtained by [Mother] from [Esurance]." [L.F. p. 17]

To be clear, there is nothing wrong with electing to secure trial court approval of a first-party insurance settlement following the wrongful death of a named insured. And plainly such approval is required when a minor is one of the first-party insureds involved in the settlement. Section 507.184; Rule 52.02. However, it is inaccurate to characterize such settlements as "wrongful death settlements." That characterization improvidently

23

suggests that the procedures described in section 537.095 apply to such settlements, when they do not. Thus, unless required by the policy,[13] or unless all first-party insureds otherwise consent, one first-party insured has no authority to enter into a settlement as a "class representative" for all first-party insureds; and a trial court has no authority to bind first-party insureds to an allocation of finite insurance proceeds under the guise of settlement approval.[14] Rather, any settlement of first-party insurance claims triggered by the wrongful death of a named insured remains subject to the rudimentary requirements of contract law, tempered by the obligation to insure that minors are duly represented in compliance with section 507.110 *et. seq*.

In summary, the Minors were required to have duly-appointed representation during the Settlement Judgment proceedings. Because Father was found to have a conflict of interest, those proceedings were invalid as to the Minors. Given our obligation to affirm the Judgment on any basis supported by the record, we conclude that the trial court properly rejected Esurance's affirmative defense of payment and release based on substantial compliance with the Settlement Judgment.

Having affirmed the trial court's finding that Esurance breached its insurance contract with the Minors, albeit on grounds other than those specified in the Judgment, we turn to the fourth essential element of a breach of contract claim--damages. It is

---

[13]Because Mother's insurance policy was not offered into evidence, we cannot determine whether the policy provided for the resolution of all first-party claims arising out of Mother's wrongful death by resort to procedures similar to those described in section 537.095.1.

[14]In contrast, a trial court does have the authority to enter a judgment allocating insurance proceeds amongst several claimants if the proceeds are properly interpleaded pursuant to section 507.060. In fact, from an insurer's perspective, arguably the only proper way to insure the extraction of a full and final release from liability for first-party claims triggered by the wrongful death of a named insured is to interplead the insurance proceeds into the registry of the court.

24

uncontested that the Minors established that they were damaged by Esurance's breach of the insurance contract, as they received none of the UM proceeds.

The Judgment awarded each of the Minors $86,414.52 calculated as "the $70,000 of insurance coverage Ordered paid [by the Second Settlement Judgment] plus interest pursuant to Missouri Revised Statute section 408.040 at the legal rate of nine percent per annum." We have already explained that the Second Settlement Judgment did not order Esurance to pay the Minors. As such, the Judgment's award of post-judgment interest, which presumed that a payment obligation was imposed on Esurance by the Second Settlement Judgment, was legally erroneous and is reversed.

Though the Second Settlement Judgment did not impose a payment obligation on Esurance, the $70,000 principal amount of the "proposed settlement" allocated to each of the Minors by that judgment is nonetheless a fair measure of damages for Esurance's breach of the insurance contract. UM coverage is required to be provided in automobile liability insurance contracts as a matter of statute. Section 379.203. UM coverage is intended "for the protection of persons insured . . . who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." Section 379.203.1. Thus, "[w]hile the measure of an insured's recovery under uninsured motorist coverage sounds in tort, it is nonetheless a contract claim." 30 Mo. Prac., Insurance Law & Practice Section 10:5 (2d ed.) (citing *Cobb*, 576 S.W.2d 726).

Wrongful death beneficiaries are entitled to recover from a tortfeasor:

25

[S]uch damages as the trier of facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death . . . .

Section 537.090. Where a wrongful death tortfeasor is an uninsured motorist, as in this case, the damages the tortfeasor would otherwise be obligated to pay under section 537.090 become the measure of recovery for first-party insureds entitled to receive UM proceeds, up to the extent of coverage. *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 220 (Mo. banc 2014) (holding that insurer "provided *coverage* for the wrongful death of its insured . . . and it *paid those benefits* to the persons authorized by section 537.080.1 to bring a wrongful death claim") (emphasis added).

The Second Settlement Judgment was entered following a hearing where evidence was taken from the Minors about their damages as a result of Mother's wrongful death. The trial court had already heard testimony from Father on the same subject in connection with the hearing preceding the Settlement Judgment. Based on that collective testimony, the trial court found in the Second Settlement Judgment that the "settlement proceeds" in the amount of $150,000 should be divided such that the Minors would each receive $70,000, Father would receive $3,612.25, and a hospital lien in the amount of $6,387.75 should be paid. Though, as we have already explained, these hearings should not have been characterized as "wrongful death settlement" hearings, the trial court

26

nonetheless determined from evidence taken in the hearings the relative damage caused to Father and the Minors by virtue of Mother's wrongful death.[15]

The transcripts from both of these hearings were in evidence at the trial giving rise to the Judgment. Esurance does not contend that the Judgment's award of $70,000 to each of the Minors is unsupported by the evidence of their damages. Thus, the trial court's award of damages in the amount of $70,000 to each Minor for Esurance's breach of the insurance contract is supported by the record.[16]

Esurance's point on appeal is denied.

## Conclusion

The trial court's Judgment awarding the Minors damages for post-judgment interest pursuant to section 408.040 is reversed. In all other respects, the Judgment is affirmed for the reasons herein explained.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur.

---

[15]Grandparents contractually waived their right to share as insureds in the UM proceeds and remain bound by the Release and the Settlement Judgment, as we explain, *supra*.

[16]We recognize that Esurance will now be required to pay out an amount in excess of its UM coverage. However, Esurance failed to insure that settlement with Father legally bound the Minors and, thus, created the risk of contract liability in excess of its policy limits. We express no opinion regarding Esurance's available recourse against Father.

27