Cite as 2024 Ark. App. 216

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-23-580

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** March 27, 2024 |
| BAXTER STOWERS | APPELLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. 03CR-20-354] |
| V. |  | HONORABLE GORDON WEBB, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

**KENNETH S. HIXSON, Judge**

On October 7, 2020, appellant Baxter Stowers was charged in the criminal division of circuit court with first-degree murder, a Class Y felony; aggravated residential burglary, a Class Y felony; criminal use of a prohibited weapon, a Class D felony; and possession of a handgun by a minor, a Class A misdemeanor. These offenses were allegedly committed on October 5, 2020, when Baxter was seventeen years old and just two days shy of his eighteenth birthday.

On February 16, 2022, Baxter filed a motion to transfer the case to the juvenile division of circuit court. After a hearing held on July 31, 2023, the trial court entered an order denying Baxter's motion to transfer, making written findings in support of its decision.

Baxter now appeals from the order denying his motion to transfer to juvenile court. On appeal, Baxter argues that the trial court's denial of his motion to transfer was clearly erroneous. We affirm in part and reverse and dismiss in part.

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2020). On the motion of the court or any party, the court in which the criminal charges have been filed shall conduct a hearing to determine whether to transfer the case to another division of circuit court having jurisdiction. Ark. Code Ann. § 9-27-318(e). The moving party bears the burden of proving that the case should be transferred to the juvenile division of circuit court. *Woods v. State*, 2018 Ark. App. 576, 565 S.W.3d 124. The trial court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Z.T. v. State*, 2015 Ark. App. 282. We will not reverse a trial court's determination of whether to transfer a case unless the decision is clearly erroneous. *Id.* A finding is clearly erroneous when, after reviewing the evidence, the appellate court is left with a firm and definite conviction that a mistake was made. *Lewis v. State*, 2020 Ark. App. 123, 596 S.W.3d 43.

At a juvenile-transfer hearing, the trial court is required to consider all the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). Pursuant to Arkansas Code Annotated section 9-27-318(h)(1), the trial court shall make written findings on all the factors set forth above. However, there is no requirement that proof be introduced against the juvenile on each

3

factor, and the trial court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *K.O.P. v. State*, 2013 Ark. App. 667.

No testimony was taken at the transfer hearing. Instead, the parties stipulated that the trial court would decide the motion based on the affidavit for probable cause to arrest Baxter; the autopsy report; Baxter's fitness-to-proceed evaluation; Baxter's criminal-responsibility evaluation; and the affidavit of Brooke Digby, coordinator of the Juvenile Ombudsman Division of the Arkansas Public Defender Commission.

The affidavit for probable cause stated that, on the afternoon of October 5, 2020, Baxter called the police and stated that he had shot a man and needed help. Baxter was at the victim's house, and he stated that the man tried to attack him, so he pulled his gun and shot him in the head.

According to the affidavit, the police went to the scene and Baxter was arrested. The victim was found lying on the floor between the front door of his residence and the door of the screened-in porch and had been shot in the head and in the arm. A .22-caliber handgun was located on the floor near the victim and there were eight spent .22-caliber shell casings at the scene. There was no sign of a struggle.

The affidavit also stated that a witness had reported that, as he was leaving the victim's residence earlier that day and walking down the driveway, he encountered a young male who asked him whether the victim was home. The witness described the young male as "very agitated or on something." When shown a photo lineup, the witness identified Baxter as the young male he had encountered that day.

4

The autopsy report stated that the victim had been shot multiple times with a .22-caliber handgun and that he had six gunshot wounds to his head and one to his arm. The medical examiner concluded that the cause of death was multiple gunshot wounds and that the manner of death was a homicide.

Baxter's fitness-to-proceed evaluation stated that Baxter does not have a mental disease or defect and that he has an understanding of the proceedings and the capacity to rationally assist in his own legal defense. Baxter's criminal-responsibility evaluation likewise stated that Baxter does not have a mental disease or defect and stated further that at the time of the alleged offense, Baxter did not lack the capacity to appreciate the criminality of his conduct or to conform his behavior to the requirements of the law.

In the criminal-responsibility evaluation, there was a narrative of Baxter's account of the events and his claim of self-defense. According to Baxter's account, the victim had been at his mother's house on the night before his death and was "not in his right mind" and was scaring him, his friends, and his mother. Baxter said that on the following day, he went to the victim's house to ask why he had acted like that, at which time the victim yelled at him and took a swing at him. Baxter stated that ever since he was old enough to hold a handgun, he had one strapped to his side. He stated that he did not go there to shoot anyone and that he shot in self-defense upon being attacked.

Finally, the affidavit of Brooke Digby, coordinator of the Juvenile Ombudsman Division of the Arkansas Public Defender Commission, was submitted for consideration. In her affidavit, Ms. Digby stated that following a finding of delinquency, a juvenile can be

5

committed to the Division of Youth Services, and she discussed some of the programs and services available in the juvenile system, which include psychiatric services and therapy sessions. Ms. Digby also discussed extended juvenile jurisdiction (EJJ), under which an offender may receive services until age twenty-one. Ms. Digby explained that under EJJ, if the offender is not amenable to treatment or commits another offense, an adult sentence could be imposed on him.

In the trial court's order denying Baxter's motion to transfer, the trial court made the following findings on the factors enumerated in Ark. Code Ann. § 9-27-318(g):

(1) The seriousness of the alleged offense(s) and whether the protection of society requires prosecution in the Criminal Division of Circuit Court.
The seriousness of the charges of Murder in the First Degree and Aggravated Residential Burglary are obvious and clearly require significant "adult" criminal penalties to protect the community where this defendant resides. The fact that he was only two days from being an adult over eighteen when he allegedly committed these acts convinces the Court he should be prosecuted as an adult.

(2) Whether the alleged offense(s) were committed in an aggressive, violent, premeditated, or willful manner.
The evidence as detailed in the probable cause affidavit and autopsy (States Exhibit "A") report, as well as the Defendant's own account of the crimes (psychological evaluations) clearly shows that the Defendant went to the home of the victim, armed with a firearm, to confront the victim about some perceived threat that the victim had allegedly posed to the Defendant's friends, his mother and to the Defendant is aggressive behavior likely to provoke a violent outcome. A witness described the Defendant as "very agitated" as he approached the victim's home with the Defendant shooting the victim once in the arm and [six] times in the head, at close range, killing him. All of these evidentiary findings tell the Court this was an extremely violent incident brought on by the aggressive, willful actions of the Defendant. The Defendant's claim of self-defense is for the Defendant to establish at trial, so the Court is not, in any fashion, prejudging the case; rather the Court is relying on evidence before it to consider the factors. The Court finds from this consideration the case should not be transferred to the Juvenile Division.

(3)   Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted.

This is an offense(s) against a person resulting in the ultimate personal injury—death.   Again, this factor compels a finding that the case should remain in adult criminal court.

(4)   The culpability of the juvenile, including the level of planning and participation in the alleged offense.

From the evidence from the documents reviewed by the Court, the Defendant appears to have acted alone.  The Defendant is solely responsible for any planning and the only participant in the criminal activity involved.  Again, the Court finds this renders the Defendant, who is now over twenty years old, liable for treatment in adult Circuit Court.

(5)   The previous history of the juvenile, . . . and any other previous history of antisocial behavior or patterns of physical violence.

The Defendant has no prior history as a juvenile.

The Court finds this mitigates in favor of the Defendant.  However, this one aspect of these factors does not overcome what the other factors mandate as the Court's decision.

(6)   The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult.

The psychological evaluations indicate this young man was normal for a young man turning eighteen.  He clearly believed he was old enough to walk around carrying a firearm.  This is adult behavior for which he must accept the responsibility of an adult to use the gun within the law.  The Court finds this behavior requires he be treated as other adults would be under the law.

(7)   Whether there are facilities or programs available to the Judge of the Juvenile Division of the Circuit Court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday.

First, the Court finds this Defendant was two days away from his eighteenth birthday when he allegedly engaged in this extremely violent and fatal behavior.  The Court finds he was a juvenile only in the most technical sense of the word.  Second, the Court also finds that while his attorney acted promptly to try to have him treated as a juvenile by filing this motion, the slowness of obtaining psychological evaluations which, unfortunately, during the time of the pandemic has become very common, delayed the process until it is simply too late to realistically send him to a facility that could achieve any level of rehabilitation by his twenty-first birthday which is only two

7

months away.  The Court finds that based upon the fact that there is no realistic possibility that meaningful rehabilitation can be achieved in a timely fashion, his case should remain in the criminal division of Circuit Court.

(8)  Whether the juvenile acted alone or was part of a group in the commission of the alleged offense(s).

The Court's written findings on factor (4) above is that Defendant apparently acted alone and is solely liable as an adult for his actions.  Therefore, he should face penal sanctions as an adult in the Criminal Division of Circuit Court.

(9)  Written reports and other materials relating to the juvenile's mental, physical, educational, and social history.

This Cout has rendered it findings in this order based on what reports and other materials are known.  Both counsels were given the opportunity to submit these documents and did so.  The Court is not aware of any other written reports or other materials.  The Court finds the Defendant's case shall remain in the adult Criminal Division of Circuit Court.

(10)  Any other factors deemed relevant by the Judge.

This Court knows of no other factors to be considered.

Based on this analysis of the statutory factors, the Court finds it must deny the Defendant's Motion to Transfer to Juvenile Division of Circuit Court and for an extended Juvenile Jurisdiction Designation.

In this appeal, Baxter argues that the trial court clearly erred in denying his motion to transfer the case to juvenile court.  Baxter specifically argues that the trial court committed clear error in its analysis of five of the statutory factors.  For the following reasons, we conclude that the trial court's decision denying Baxter's transfer motion was not clearly erroneous.

Baxter argues that the trial court erred in its analysis of the first statutory factor when it found that "[t]he seriousness of the charges of Murder in the First Degree and Aggravated Residential Burglary are obvious and clearly require significant 'adult' criminal penalties to

protect the community where this defendant resides." Baxter argues that this finding by the trial court ignores the EJJ scheme, which provides that in a juvenile-delinquency proceeding with an EJJ designation, the trial court has the authority under certain circumstances to impose the full range of adult sentencing so the community would be adequately protected. However, as the trial court found, there is no question as to the seriousness of the alleged offenses, and Baxter does not appear to challenge that the charges were of a serious nature. We conclude without hesitation that the trial court correctly found that the first factor weighed in favor of denying the transfer.

Baxter next challenges the trial court's finding under the second statutory factor that his actions were aggressive and willful as well as the trial court's statement that Baxter's "claim of self defense is for [Baxter] to establish at trial, so the Court is not, in any fashion, prejudging the case." Baxter asserts that his claim of self-defense was contained in the affidavit for probable cause and that the State produced no evidence to rebut his claim. We, however, find no error on this point. In *Fleetwood v. State*, 329 Ark. 327, 947 S.W.2d 387 (1997), the juvenile was charged with second-degree murder and claimed that the denial of his motion to transfer was improper because of his affirmative defense of self-defense. The supreme court in *Fleetwood* disagreed and stated that the statutory scheme for determining whether a case should be transferred to juvenile court is not dependent upon affirmative defenses. Here, the record shows that the victim was shot six times in the head, and as in *Fleetwood*, the fact that Baxter claimed self-defense provided no basis to transfer the case to juvenile court.

Baxter next challenges the trial court's findings under the fourth statutory factor where the trial court, in assessing Baxter's culpability and level of participation in the alleged offense, stated that Baxter "appears to have acted alone" and is "solely responsible for any planning and the only participant in the criminal activity involved." Baxter argues that the trial court's error here is twofold because the trial court conflated this factor with factor eight (whether the juvenile acted alone or was part of a group), and the trial court never actually found any level of planning by Baxter. We find no error under this point because the trial court merely relied on the similarities between factors four and factors eight in making its findings, and whatever Baxter's level of planning may have been, a transfer was not warranted in light of the trial court's analysis of the remaining factors, which includes the uncontroverted serious and violent nature of the offense.

With respect to the sixth statutory factor pertaining to the sophistication and maturity of the juvenile, Baxter assigns error to the trial court's finding that Baxter had engaged in adult behavior because he "believed he was old enough to walk around carrying a firearm." Baxter asserts that his criminal-responsibility evaluation noted that carrying a firearm is not atypical for teenage boys in rural areas such as Baxter County. Despite this notation in the criminal-responsibility evaluation, we find no error in the trial court's finding that carrying a handgun on one's side is indicative of the desire to be treated as an adult, and we further conclude that in light of all the statutory factors, there was no clear error by the trial court in denying the transfer.

10

Finally, Baxter challenges the trial court's findings under the seventh statutory factor, where the trial court stated that Baxter could not realistically be rehabilitated because at the time of the transfer hearing, he was two months from his twenty-first birthday. Baxter generally argues that the lengthy delay between his being charged and the transfer hearing was not his fault but was the fault of the trial court, and therefore this factor should not have weighed against him. Baxter also notes that Ark. Code Ann. § 9-27-318(f) provides that "[t]he court shall conduct a transfer hearing . . . no longer than ninety days from the date of the motion to transfer the case." Here, Baxter filed his motion to transfer on February 16, 2022, and the transfer hearing was not held until July 31, 2023.

We disagree with Baxter's claim that the timeliness of the transfer hearing compels reversal. Baxter was charged with the offenses on October 7, 2020. One year and four months later—on February 16, 2022—Baxter filed a motion to transfer to juvenile court and included a request for EJJ designation, and he requested a hearing within ninety days. On May 10, Baxter filed petitions for fitness-to-proceed and criminal-responsibility examinations. Baxter's motion for these examinations was granted the next day, and these evaluations were completed and presented to the trial court on November 18 and 21, 2022, at which time Baxter was already twenty years old. Baxter filed numerous motions for continuances throughout the proceedings, including a motion for continuance on February 10, 2023, which was granted by the trial court. On July 25, 2023, which was six days before the transfer hearing, Baxter filed a supplemental affidavit in support of his motion for juvenile transfer, attaching Brooke Digby's affidavit. Baxter never made any written

11

objection to the trial court's holding the transfer hearing outside the statutory ninety-day period, nor did he raise any such objection at the hearing itself. At the hearing, Baxter presented arguments on the ten statutory factors but made no argument regarding the timeliness of the hearing.

The ninety-day requirement for holding a transfer hearing is not jurisdictional. This issue was resolved by the supreme court in *Cobbins v. State*, 306 Ark. 447, 816 S.W.2d 161 (1991). In *Cobbins*, the juvenile defendant was charged with rape and aggravated robbery and argued that the trial court had lost jurisdiction because it failed to hold a juvenile-transfer hearing within ninety days after the criminal charges were filed,[1] and instead, the hearing was held fourteen months later. The supreme court in *Cobbins* affirmed the denial of a transfer and held that, although the language of the statute was mandatory, it was silent on the effect of noncompliance, and there was nothing in the statute to indicate it was jurisdictional. The *Cobbins* court further concluded that the appellant's failure to demand a transfer hearing until well beyond the ninety-day period waived the right to insist on a timely hearing.

For the reasons stated herein, we conclude that the scheduling of Baxter's transfer hearing beyond ninety days did not deprive the trial court of jurisdiction to hold the hearing, nor does the timing of the hearing entitle Baxter to reversal of the trial court's order denying

---

[1]The applicable statute at that time was Ark. Code Ann. § 9-27-318(b)(2) (Repl. 1991), which provided that "[t]he circuit court shall hold a hearing within ninety days of the filing of charges to determine whether to retain jurisdiction of the juvenile in circuit court."

the transfer. Our supreme court has held that a juvenile may be tried as an adult solely because of the serious and violent nature of the offense. *Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004). There was evidence presented to the trial court showing that Baxter shot the victim six times in the head, causing the victim's death. This is the epitome of "serious and violent" and would have, alone, justified denying the transfer to juvenile court regardless of when the transfer hearing had taken place. Because we are not left with a firm and definite conviction that the trial court made a mistake in denying Baxter's motion to transfer the case to juvenile court, we affirm the trial court's order as it relates to the felony charges.

Although we affirm the denial of the motion to transfer as to Baxter's felony charges, we must dismiss the misdemeanor (possession of a handgun by a minor) that Baxter was charged with in the criminal division of circuit court. We addressed this issue in *J.A.C. v. State*, 2013 Ark. App. 496, at 3–4, where we held:

> Arkansas Code Annotated section 9-27-318(c)(1) provides that a prosecuting attorney may charge a juvenile in either the juvenile or criminal division of circuit court when a case involves a juvenile at least sixteen years old when he or she engages in conduct that, if committed by an adult, would be any felony. The prosecutor did not have discretion to file the misdemeanor charges in the criminal division of circuit court. Section 9-27-318(d) would allow for the misdemeanors to be charged in the criminal division only if a transfer was ordered after a hearing before the juvenile division of circuit court. This was not done. Because the circuit court never had jurisdiction of the two misdemeanor charges, they are dismissed without prejudice. *See Butler v. State*, 324 Ark. 476, 922 S.W.2d 685 (1996).

The trial court did not have jurisdiction of the misdemeanor charge. We affirm the denial of transfer as to the felony charges and reverse and dismiss the misdemeanor charge without prejudice.

Affirmed in part; reversed and dismissed in part.

ABRAMSON and GRUBER, JJ., agree.

*Wilkerson Law Firm*, by: *Shane Wilkerson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.