Cite as 2025 Ark. App. 117

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-24-135

| | |
|---|---|
| JORGE ANTONIO CASILLAS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** February 26, 2025<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26CR-23-159]<br><br>HONORABLE KARA A. PETRO, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Jorge Antonio Casillas appeals the denial of his motions to transfer to the juvenile division of the circuit court. He contends that the circuit court erred in its findings on factor 7 listed in Ark. Code Ann. § 9-27-318(g) (Repl. 2020), which requires the circuit court to consider whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday. We affirm.

In a criminal information filed 22 March 2023, the State charged seventeen-year-old Casillas with first-degree battery and first-degree terroristic threatening (case No. 26CR-23-159).[1] The attached affidavit explained that on 19 March 2023, officers responded to a call of shots fired on Spring Street in Hot Springs. Police were unable to locate the suspect

---

[1]Casillas turned eighteen on 21 October 2023.

at that time but did interview the juvenile male victim, MC, who said that he had been walking on Spring Street when a Hispanic male known as "Mexican Jay" (later identified as Casillas) confronted him. Casillas pointed a pistol at MC, placed the barrel of the pistol to MC's forehead, and stated that he was going to kill MC. MC attempted to leave, but Casillas and two other male suspects hit in the back of his head, knocking him to the ground. Casillas and the others continued to strike MC with their fists and with the butts of pistols. MC was able to get up and began to run away, and Casillas shot MC in his right thigh.

In a separate case, the State filed a criminal information on 26 May 2023 charging Casillas with kidnapping (case No. 26CR-23-322). According to the attached affidavit, Hot Springs police responded to a missing-persons call on 17 May 2023 and were told that Amir Ellis had been missing since the day before. Casillas and two other individuals were identified as suspects in the disappearance, and after his arrest on May 27, Casillas reported that he, Nathaniel Speed, and Alexia Chambers took Ellis, bound and at gunpoint, to an unidentified area near Jessieville High School. Casillas said that Speed walked Ellis into the woods at gunpoint, and approximately twenty minutes later, Speed returned to the vehicle alone.

Casillas moved to transfer his cases to juvenile court. Arkansas Code Annotated section 9-27-318(g) dictates that in deciding a motion to transfer, the circuit court is to consider the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

2

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

The circuit court is required to make written findings on all the above factors. Ark. Code Ann. § 9-27-318(h)(1). However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 329, 420 S.W.3d 494.

The circuit court convened a hearing on Casillas's motions to transfer on 21 August 2023, and the State presented the following evidence. Investigator Don Yoak with the Garland County Sheriff's Department was assigned to investigate the shooting that occurred

3

in March 2023. Yoak interviewed the victim, who identified his assailant and also shared with police a video of the incident from social media. The video clearly shows the victim and Casillas as his assailant.

Brian Branstetter, an investigator with the Hot Springs Police Department, was assigned to the Ellis case. He interviewed witnesses that had been at the residence where Ellis had last been seen, including Takahi Shelby, who eventually told police that Speed, Chambers, and Casillas had taken Ellis from the residence.

Thomas Plummer, a detective with the Hot Springs Police Department, was also involved in the Ellis investigation. He interviewed Casillas, who described the night of Ellis's disappearance as follows. Speed drove to the residence where Ellis was located. Speed and Casillas went inside, while Chambers waited in the vehicle. He and Speed forcibly escorted Ellis out to the vehicle, and Speed restrained Ellis by binding his hands and feet with rope. Speed was also in possession of a handgun. Speed pointed or gestured with the gun repeatedly while driving, and he hit Ellis's head or face at least once. They eventually stopped on the side of the road, and Speed and Casillas got Ellis out of the vehicle. Casillas then waited at the vehicle while Speed led Ellis away at gunpoint. Casillas heard more than one gun shot, and Speed returned approximately twenty minutes later. Casillas later cleaned the inside of Speed's vehicle. Casillas attempted to lead police to the location where the vehicle had stopped but was unsuccessful. At the time of the hearing, Ellis had not been located.[2]

---

[2]Ellis's body was discovered off Highway 7 in Jessieville on 16 December 2023. On 4 January 2024, the State amended the criminal information in 26CR-23-322 to include a charge of capital murder.

4

Jordan Leonard, a juvenile probation officer in Garland County, had been Casillas's probation officer since October 2021 and testified to some of Casillas's history with the juvenile system. The State also admitted his extensive juvenile records, which showed that Casillas has been involved with the juvenile court system since he was five years old, when a family-in-need-of-services (FINS) petition was filed on 20 September 2011. The attached affidavit of Wendy Baker, his grandmother, stated that she and Harry Baker (grandfather) needed assistance taking care of Casillas and his younger brother. The children were in their grandparents' care because their mom was on drugs and could not care for them.[3] Baker also reported that the children had been sexually abused by another grandson. The court ordered that the children be placed with the Bakers and that the children continue counseling. In April 2012, the court ordered the FINS case closed.

Another FINS case was opened in December 2014 due to Casillas's aggressive and disrespectful behavior at school. The affidavit supporting the petition noted that due to his grandfather's lack of cooperation, Casillas was no longer in counseling and was not receiving prescribed medication to treat his behavioral issues. The court ordered individual and family counseling and ordered Casillas to complete an educational program at Fountain Lake School District. The court closed the FINS case in May 2015 after ordering that Harry Baker cooperate with the school regarding Casillas's educational plan.

On 14 November 2017, a third FINS petition was filed because twelve-year-old Casillas had been suspended from school for, among other things, yelling at teachers,

[3]Casillas's father lives in Mexico and has not been a part of his life.

stabbing another student with a pencil, and throwing food in cafeteria.[4]  On November 21, he was accused of third-degree battery after assaulting a classmate and was ordered to serve forty-five days in a home detention program.  He was also placed on probation and ordered to attend anger-management classes, continue counseling, and engage in Ouachita Children's Center (OCC) Outreach program.  However, he failed to attend school with no unexcused absences and to obey school rules, which was also a condition of probation, and he was accused of second-degree terroristic threatening.  In October 2018, the juvenile court again ordered Casillas to participate in a home-detention/house-arrest program.

In November 2018, Casillas was placed at Millcreek Behavioral Health, which is a psychiatric residential-treatment facility for children with violent behavior issues.  Records indicate he was treated for mood instability with poor impulse control, anger management, and poor academic performance.  On 8 May 2019, Casillas was discharged from probation and released from Millcreek to his grandfather's custody.

Shortly thereafter, on 2 August 2019, Casillas was placed in the joint custody of his mother and maternal grandmother.  This placement was short lived, however; on 23 September 2019, Casillas was taken into the custody of the Arkansas Department of Human Services (DHS) because his mother was using methamphetamine and his grandmother could not care for him any longer.  On October 2, he was placed in a qualified residential-treatment program (QRTP), which typically provides psych evaluations, therapy, and

---

[4]This FINS case was closed on 4 January 2019.

medication management.[5]  In August 2020, he was again placed in the permanent custody of his grandfather, Harry Baker.

Casillas was accused of disorderly conduct at school on November 19 and December 11, and on 28 January 2021, the juvenile court adjudicated him delinquent and placed him on probation.  He was ordered to participate in a mentor program, complete thirty Act 2 hours, attend counseling, and take all prescribed medication.  In May 2021, he was charged with possession of a handgun and, after pleading guilty, was sentenced to ninety days in the juvenile detention center (JDC).  At the detention center, he attended school and received therapy.  While at the JDC, however, he was also charged with terroristic threatening and obstructing governmental operations.  Casillas pled guilty and was placed at OCC after his release from JDC.

In December 2021, the State alleged that Casillas had committed robbery and theft of property.  The juvenile court ordered that he serve thirty days under house arrest and wear an ankle monitor.  In March 2022, the State moved to nolle pross the robbery and theft-of-property charges, and Casillas was released from house arrest.  On 3 May 2022, Casillas was discharged from probation.

On 21 September 2022, Casillas was accused of third-degree domestic battering after his girlfriend reported that he had hit the side of her face multiple times with his fist.  On 7 October 2022, he pled guilty and was sentenced to nine days in the JDC with twenty-one days' credit for time served.  He was also placed on probation, ordered to attend school with

_____

[5]Casillas's QRTP assessment indicates that he was taking medication for depression and bipolar disorder.  It is unclear from the record when he received these diagnoses.

7

no unexcused absences or tardies, and "attend and complete the OCC program upon release from detention."

On 9 December 2022, the court placed Casillas in the custody of Sabra Addison[6] and ordered him to continue counseling. On December 22, however, the State petitioned to revoke his probation and alleged that he had violated his probation by failing to observe curfew, failing to obey his parent or guardian, associating with a gang or negative peer group, and carrying a firearm.

On 3 January 2023, Casillas was charged with resisting arrest. He pled guilty and was sentenced to thirty days at JDC. The court also ordered that he be placed on electronic monitoring after his release from JDC. Finally, he was ordered to complete the Youth Challenge Program beginning on 18 February 2023. On February 13, he was released from electronic monitoring.

In March 2023, the State again filed a petition to revoke Casillas's probation for failing to abide by the counsel of his probation officer and to follow orders of the court. Specifically, Casillas had been released from the Youth Challenge Program for noncompliance with rules and fighting other kids. On 30 May 2023, Casillas was committed to the Department of Youth Services (DYS). The disposition order stated, "Jorge has been in multiple placements, group homes, DHS custody, and court ordered out of home placement. He is disruptive everywhere he is placed. Jorge has adult criminal charges out of circuit court. Jorge has not responded to any rehabilitative services ordered."

---

[6]It is not clear from the record what relationship Addison has to Casillas.

8

Leonard stated that Casillas's recent commitment to DYS had no specific time frame, but "he is not EJJ, so typically they don't stay longer than six months." He acknowledged that Casillas would turn eighteen years old on 21 October 2023 and explained that "when a juvenile turns eighteen typically a lot of our services are not open to him anymore. He can't go to OCC, he can't do classes. Typically at that point we would have community service and counseling." Placement in a long-term treatment facility was not feasible because as an adult, Casillas would be able to leave whenever he wanted. Leonard did not believe that the services still available to Casillas after his eighteenth birthday would be successful because of his previous history and supervision.

At the close of evidence, the court announced it would take the case under advisement. On 27 November 2023, the circuit court entered lengthy written findings denying Casillas's motions to transfer. Relevant to this appeal, the court found on factor 7:

> Defendant has received the following treatment while being supervised in Juvenile Court:
>
> Probation, ankle monitoring, anger management classes, Youth Challenge Program, Fountain Lake Second Chance program, house arrest, mentoring program, individual and family counseling, and inpatient treatment with medication management, Millcreek House placement, QRTP housing placement, housing at Ouachita Children's Center, group homes, DHS custody, court-ordered out-of-home placement, alternative school and juvenile detention. The only thing prior to this offense that the Defendant did not experience during his years involved with Juvenile Court is Boot Camp and a commitment to DYS. The Defendant is now serving a DYS commitment because of probation violations relating to his adult charges.
>
> Jordan Leonard, the Defendant's Juvenile Garland County Probation Officer testified that the overall goal was to rehabilitate the Defendant. Rehabilitation was not successful for long periods of time. When the Defendant was at OCC he was monitored on medication and he was better with coping skills but once released from OCC he would no longer take medication. He could perform better to an extent when on medication. The

9

Defendant was not medication compliant, had no family support, and did not consistently attend school. The Defendant's probation officer further testified that the Defendant did not do everything that was asked of him in probation. The Defendant was committed to the Division of Youth Services in his most recent sentence in Juvenile Court. There is no time frame for how long the commitment lasts. Once goals are met they request a court date. He was not EJJ [extended juvenile jurisdiction] so typically the longest they stay is six months.

The probation officer testified that the Defendant turns eighteen years old in October of this year and once he turns eighteen, he cannot receive services from the Juvenile Court such as OCC and classes. Basically, at that point there would be community service or outpatient counseling because at eighteen years of age, the Defendant can't be committed to a long-term facility because he could check himself out and leave.

The opinion of the Defendant's juvenile probation officer is that resources from Juvenile Court would not be successful with Defendant now that he is to turn eighteen on October 21, 2023.

The Court has considered the Defendant's extensive criminal history. A multitude of services have been offered to the Defendant for many years via Juvenile Court and the juvenile has not responded to any rehabilitative services. The Juvenile Court stated in its DYS commitment order that "Jorge has been in multiple placements, group homes, DHS custody, and court-ordered out-of-home placement. He is disruptive everywhere he is placed. Jorge has adult criminal charges out of Circuit Court. Jorge has not responded to any rehabilitative services ordered." It is clear to this Court that Juvenile Court services have been completely unsuccessful in rehabilitating the Defendant and there is no indication that would change.

Casillas timely appealed the court's orders.

A circuit court's decision to retain jurisdiction of criminal charges against a juvenile must be supported by clear and convincing evidence. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997). We will not reverse a circuit court's decision on whether to transfer a case unless it is clearly erroneous. *Nichols v. State*, 2015 Ark. App. 397, 466 S.W.3d

10

431.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.  *Id.*  As we have held many times, appellate courts will not reweigh the evidence presented to the circuit court. *See Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002).  In addition, matters of credibility are for the circuit court to determine, and we do not attempt to pass on the credibility of witnesses.  *Duren v. State*, 2018 Ark. App. 68, 544 S.W.3d 555.

To reiterate, factor 7 instructs the circuit court to consider whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday.  Ark. Code Ann. § 9-27-318(g)(7).  Casillas first argues that the circuit court based its findings on factor 7 on Leonard's testimony, who did not testify as to the services available at DYS.  Casillas contends that the circuit court erroneously relied on Leonard's testimony and that Leonard "did not have an adequate awareness of what facilities or programs were available to the Appellant that were likely to rehabilitate the Appellant."  He further asserts that the circuit court gave "incorrect weight to the evidence on this factor."  Casillas concludes that there was "no evidence received at this motion to transfer hearing that focused on the seventh factor of subsection (g) and what, if any, rehabilitative services and what programs were still available" to him while in DYS custody.[7]

---

[7]Casillas also takes issue with the wording of the circuit court's order, specifically the court's statement, "ARCP 9-27-318(g) are the factors the Court may consider at the transfer hearing to determine whether Defendant's case should be transferred to Juvenile Court for adjudication."  According to the statute, the circuit court *shall* consider all ten factors listed.  *See* Ark. Code Ann. § 9-27-318(g).  We acknowledge the court's wording is imprecise, but

Next, Casillas cites *Z.T. v. State*, 2015 Ark. App. 282, in which Z.T. had been charged with aggravated robbery and theft of property in circuit court. In denying his motion to transfer to juvenile court, the circuit court made written findings on all the necessary factors, determining that each factor weighed in favor of denying transfer. On appeal, however, this court found that the circuit court's findings with respect to three factors were factually inconsistent with the evidence and that those three factors weighed in favor of transfer. While acknowledging that the circuit court is not required to give equal weight to each of the factors, this court held, "[W]e are unable to tell how much weight the trial court gave to the seriousness and violent nature of the offense, and how much weight it gave to its findings regarding the three factors that were inconsistent with the evidence in arriving at its decision to deny the transfer." *Id.* at 8. We therefore remanded the case for the circuit court to reconsider the transfer motion, "giving proper consideration to the proof, or lack thereof, bearing on each of the statutory factors." *Id.*

Casillas also notes that in *Z.T.* the court received testimony from the ombudsman for the Public Defender Commission, who testified about rehabilitation options available to Z.T. if his case were transferred to juvenile court, including a maximum ninety-day detention and EJJ designation. *Id.* at 5. He also cites other cases in which a juvenile ombudsman testified about options available at DYS. *See Presley v. State*, 2022 Ark. App. 282, 645 S.W.3d 56 (treatment and rehabilitation services available to juveniles in DYS custody including individual, group, and family therapy; psychiatric and psychological

---

considering the court's fourteen pages of written findings on all the factors, we hold that Casillas has demonstrated no reversible error.

assessments; behavior-intervention programs and trauma-focused cognitive-behavioral therapy; vocational-training opportunities; and transitional-setting placement and assistance); *Lewis v. State*, 2020 Ark. App. 123, 596 S.W.3d 43 (DYS, which has a unit dedicated to 18- to 21-year-olds, offers group and family therapy, extensive psychological evaluations, and substance-abuse counseling; assists juveniles in obtaining their GEDs; and offers aftercare services until a juvenile's twenty-first birthday, which includes counseling and case-management services, additional substance-abuse treatment, transportation, and help with job placement).

Casillas suggests that if a juvenile ombudsman had testified in his case, it "could have aided the circuit court in being advised of the full panoply of rehabilitative services and programs DYS would have for a juvenile between the age of eighteen and twenty-one." However, not only was there no testimony from a juvenile ombudsman, but there was also no testimony from an evaluating psychologist or a DYS therapist. Finally, he also contends that EJJ should have been considered and requested at the time of his transfer hearing. He asks that pursuant to the ruling in *Z.T.*, *supra*, this court remand with instructions to reconsider the transfer motions and examine the proof, or lack thereof, on each statutory factor.

In response to Casillas's arguments, the State first notes that the serious and violent nature of Casillas's crimes is undisputed, and that alone is enough to support the circuit court's decision to deny transfer to the juvenile division. *See Lewis v. State*, 2020 Ark. App. 123, 596 S.W.3d 43 (a juvenile may be tried as an adult solely because of the serious and violent nature of the offense).

The State also asserts that while Casillas takes issue with the alleged inadequacy of Leonard's testimony, he did not present any proof or make any argument disputing it. He also failed to offer any testimony from a juvenile ombudsman or anyone else about the rehabilitative services available to him in DYS custody. In addition, the circuit court considered the myriad services that Casillas had already received during his years in the juvenile-justice system and credited Leonard's testimony that any further resources available would not rehabilitate him. Therefore, the State argues, the circuit court did not err in its findings on factor 7 and properly denied the petition to transfer to juvenile court.

In reply, Casillas cites this court's recent decision in *Minor Child v. State*¸ 2024 Ark. App. 393, 701 S.W.3d 751, in which we reversed a denial of transfer to juvenile court after holding that the circuit court's written findings were inaccurate and inconsistent with the entire evidence presented. Specific to factor 7, the circuit court had found that "there are few, if any, viable options remaining in the juvenile division of circuit court that are likely to rehabilitate the Defendant before the expiration of her twenty-first (21st) birthday." *Id.* at 27, 701 S.W.3d at 768. We held that the circuit court clearly erred in making this finding because there was no evidence whatsoever presented to support it. Minor Child attempted to introduce affidavits from the coordinator of the Juvenile Ombudsman Division of the Arkansas Public Defender Commission and the DHS coordinator of the Interstate Compact for Juveniles (ICJ) as well as an ICJ publication to explain to the court the juvenile services available to Minor Child, but the circuit court sustained the State's objection to this evidence. Accordingly, this court held that "[d]espite the lack of evidence that there are services available, the circuit court found that 'few' services are available. The circuit court's

14

finding on this factor is another example of the circuit court making a finding with no supporting evidence." *Id.* at 27–28, 701 S.W.3d at 768.

Casillas argues that the circuit court here similarly erred by "conflating the amount of problems [Casillas] has experienced as a juvenile with what resources could be available to him in a DYS setting." He asserts the record is "silent on that issue" and concludes that representation by the Juvenile Justice Ombudsman of the Arkansas Public Defender Commission should be mandatory for every hearing on a motion to transfer a defendant from circuit court to the juvenile division of circuit court.

We affirm the circuit court's order denying the motion to transfer. First, Casillas misrepresents Leonard's testimony in his brief:

> The orders denying motion to transfer to juvenile court chronicled Mr. Leonard's testimony that when the Appellant turned eighteen years old in October of 2023, the Appellant could not receive services such as OCC and classes. *Id. That at that point there would be no community service or outpatient counseling* because at eighteen years of age, the Appellant could not be committed to a long term care facility because he could check himself out and leave.

(Emphasis added.) In fact, Leonard testified that community service and outpatient counseling would be two remaining options. Thus, unlike *Minor Child v. State*, *supra*, there was some testimony on what options remained in the juvenile division of circuit court.

Second, even assuming a lack of evidence on specific facilities or programs still available in the juvenile division, there was certainly extensive evidence to support the conclusion that any such facilities or programs would not be likely to rehabilitate Casillas before his twenty-first birthday. As pointed out by the State, the circuit court credited Leonard's opinion that resources available in juvenile court would not be successful with

Casillas after he turns eighteen. As noted above, matters of credibility are for the circuit court to determine, and we do not attempt to pass on the credibility of witnesses. *Duren*, *supra*. The circuit court also had before it Casillas's lengthy juvenile record, through which he had already received many services, to support its conclusion that further services would not successfully rehabilitate Casillas. This is in stark contrast to the juvenile in *Minor Child*, who had no history of juvenile delinquency. 2024 Ark. App. 393, at 22, 701 S.W.3d at 765.

*Z.T.*, *supra*, is also distinguishable. In *Z.T.*, we remanded for reconsideration of the statutory factors because the circuit court had made several findings wholly inconsistent with the evidence.

> In particular, the trial court found that the previous history of the juvenile justified prosecution in the criminal division of circuit court, even though the only previous juvenile case filed against Z.T. had been dismissed. There was no evidence that Z.T. had previously been adjudicated a juvenile offender. Moreover, the trial court found that Z.T.'s sophistication or maturity level justified prosecution in criminal court when the only evidence presented on that factor was Z.T.'s mother's testimony that he was childish and immature. Finally, the trial court mistakenly concluded that written reports and other materials relating to Z.T.'s mental, physical, educational, and social history justified prosecution in criminal court because no such reports or other materials were introduced.

2015 Ark. App. 282, at 7–8. Here, there was evidence of the many services Casillas had already been offered as well as his probation officer's testimony that, due to Casillas's history and supervision, any remaining services would be unsuccessful.

Finally, contrary to Casillas's argument that EJJ should have been considered and requested for at his transfer hearing, there can be no EJJ designation unless the case is already in the juvenile division or is transferred to the juvenile division. *See Lindsey v. State*, 2016

Ark. App. 355, 498 S.W.3d 336 (statutes governing EJJ presuppose that, before a request for designation is considered, the case is in the juvenile division). Because the case is not already in the Garland County Circuit Court's juvenile division and the criminal division denied Casillas's transfer motion to juvenile division, EJJ is not applicable.

Affirmed.

TUCKER and THYER, JJ., agree.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.